John B. CONTI, Appellee,

v.

**REPUBLIC UNDERWRITERS INSURANCE COMPANY,**
Appellant.

No. 67457.

Supreme Court of Oklahoma.

Oct. 3, 1989.

As Corrected Oct. 25, 1989.

---

2. See *Boy Scouts of America, Inc. v. Thompson,* 380 P.2d 705 (Okla.1963); *Wilson v. Lee Evans* *Drilling Co.,* 322 P.2d 630 (Okla.1958).

1358

D. Chad Ransdell, Oklahoma City, John G. Johnson, Del City, for appellee.

Danny K. Shadid, Robert Trent Pipes, Oklahoma City, for appellant.

SIMMS, Justice:

Actions for breach of contract of insurance and for tortious bad faith in insurance settlement. The jury returned a verdict for the plaintiff on both causes of action, assessing damages for the breach of contract at $64,000.00 and awarding exemplary damages in the amount of $200,000.00 for bad faith. The trial court entered judgment in accordance with the verdict, awarded plaintiff's request for attorney fees and costs, and defendant insurance company appeals.

The following facts are uncontested.

The appellee's residence was purchased in 1977 through a contract for deed. For reasons which are not clear in this record, the legal title to the property was put in the name of appellee's father. The grantor, the grantees (appellee's parents), and the appellee himself, however, all considered the property as belonging to appellee. At the time the home and surrounding property was purchased, the appellee's father contacted the appellant's agent and asked that an insurance policy be written on the home designating the appellee, John B. Conti, Jr., as owner. This policy was paid and in force at the time of the fire in question.

While he was away on vacation, the appellees' home was destroyed by fire. There is no question, for purposes of the instant case, that the fire was arson-induced. Because John Conti, Sr., was record owner to the property, it was he who was contacted by the Midwest City Fire Department the night of the fire. It was also the senior Conti who notified the insurance representative that a claim was going to be made.

When appellee returned from his vacation three days after the fire, he was told that the fire was arson related and that he was the prime suspect. By this time, the insurance adjuster had been provided with the same information.

Because the fire was arson, appellant insurance company questioned the validity of appellee's claim. Appellant's suspicions were heightened when the Midwest City Fire Department investigators told them that a number of items of personal property, apparently from the appellee's house, had been stored in a nearby abandoned building on the property. Although most of these items were later disclosed to have been owned by the appellee's girlfriend and simply stored there for convenience, appellant began scrutinizing the appellee's claim. Appellant's suspicions eventually resulted in their refusal to honor appellee's insurance claim. Conti then filed suit in district court to recover for breach of contract of insurance and alleging, as a separate cause of action, that appellant's acts constituted tortious bad faith in an insurance settlement.

I.

The appellant's first proposition of error is that the trial court erred in refusing to grant a directed verdict in favor of the defendant on the appellee's cause of action for bad faith in an insurance settlement. In three sub-propositions to Proposition I, appellant argues that a directed verdict on this issue should have been granted because there were legitimate disputes to the validity of the appellee's claim on: (A) grounds of arson; (B) appellee's insurable interest; and (C) misrepresentations relating to personal property lost and the value placed on that property.

In the interest of clarity, we will begin our discussion with appellant's arguments regarding insurable interest and misrepresentation. Resolution in this manner makes a detailed discussion of Appellant's Proposition I unnecessary. We rec-

ognize the general rule that it is not bad faith for an insurer to resort to a judicial forum to settle legitimate disputes as to the validity or amount of an insurance claim. *Christian v. American Home Assurance Co.,* Okl., 577 P.2d 899 (1978). The essence of the tort of bad faith, as it is recognized in Oklahoma, is the *unreasonableness* of the insurer's actions. *McCorkle v. Great Atlantic Insurance Co.,* Okl., 637 P.2d 583 (1981).

## II.

Appellants argue that a directed verdict should have been granted on the bad faith cause of action because there were legitimate disputes regarding the appellee's insurable interest. Here, we see little in dispute.

 The sole support for appellant's argument is that bare legal title to the property remained in the name of appellee's father. It is an accepted fact that the appellee had undisputed possession of the property. Nor is there any question that the appellee enjoyed beneficial ownership, or that he had equitable title by virtue of his contributions and the intent expressed by all parties to the original transaction. It has long been recognized in Oklahoma that an insurer may not escape its contractual obligation to one who has equitable title, beneficial ownership and undisputed possession of property, even though bare legal title rests in another. See: *Pease v. Traveler's Fire Insurance Co.,* 185 Okl. 421, 93 P.2d 536, 538 (1939).

"Insurable interest" is defined as: "any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." 36 O.S.1981, § 3605(B). The record shows that the appellee had substantial actual, economic interest in this house, and that his interest was certainly lawful, that is: an interest that was not acquired in violation of the law or one which is prohibited by law. See: *Snethen v. Oklahoma State Union of the Farmers Educational and Cooperative Union of*

*America,* Okl., 664 P.2d 377, 380 (1983). This assignment of error lacks merit.

## III.

Next, in support of their contention that the punitive damages issue should have been removed from the jury's consideration, the appellant states that there were legitimate disputes regarding alleged misrepresentations relating to the source and amount of loss. Here, appellant argues that the appellee over-valued certain items of personal property and claimed as lost other items which were later discovered stored in other locations. As factual support for this contention, the appellant directs our attention to a livingroom "pit group" the appellee first claimed as having a value of $3,000.00, when the sales receipt later showed it to have cost $1,173.00.

The record shows that the alleged discrepancies were discovered when the appellant's adjuster compared two separate proofs of loss that the appellee supplied. After receiving the appellee's first proof of loss, appellant demanded that the appellee complete a second proof of loss, this time providing supporting receipts and other documentation for his claim. When the second proof of loss was compared against the first, and then compared against the documentation obtained by the appellant's investigators, it was discovered that the appellee had inflated the value on some of the items lost in the fire. The appellee testified that in the first of these, he estimated the purchase prices of the items from memory and that he remembered spending in excess of $3,000.00 in the store that day. After the appellant responded to this first proof of loss with a demand for documentation, the appellee obtained copies of some receipts and price quotes from retailers on other items, based on the current retail costs. The evidence showed that, other than the pit group, the appellee overstated the value of a stereo system purchased at a local department store by $320.00, (representing a difference of 18% above the actual cost).

 If there is conflicting evidence as to the reasonableness of the insurer's actions

from which different inferences may be drawn, "then what is reasonable is *always* a question to be determined by the trier of fact by a consideration of the circumstances in each case." *McCorkle v. Great Atlantic Insurance Co.*, Okl., 637 P.2d 583, 587 (1981) (emphasis added). This Court does not attempt to weigh the evidence, but examines the record only to determine whether the evidence and permissible inferences drawn therefrom reasonably sustain the jury's verdict. *Akins v. Altus Newspaper, Inc.*, Okl., 609 P.2d 1263 (1977); *Osborn v. White Eagle Oil Co.*, Okl., 355 P.2d 1041 (1960).

█ We conclude that the testimony, evidence, and permissible inferences support the jury's conclusion that there was no legitimate dispute regarding the values placed on the lost property here. The appellant only questioned the appellee's claims on the pit group and the stereo system. The appellee's explanations were apparently sufficiently credible to the jury to overcome the appellant's suggestion that Conti was attempting to defraud the insurance company. The appellant has not sustained his burden on appeal in this assignment. See: *Akins*, supra; *Osborn*, supra.

### IV.

We now consider appellant's assignments of error relating to the arson defense. In a case factually similar to this case, we determined that it was error to submit a plaintiff's plea for punitive damages to the jury when (1) the defendant's evidence, if believed by the jury, could have supported an arson defense; and (2) the plaintiff failed to meet his burden of proof. *Manis v. Hartford Fire Insurance Company*, Okl., 681 P.2d 760, 762 (1984). The crucial consideration in that case was the relative merit in the evidence supporting the defense of arson. We said:

"Facts were in dispute as to the cause of the fire. The insurers had a right to have this dispute settled in a judicial forum. A [cause of action for bad faith]

will not lie where there is a legitimate dispute." 681 P.2d at 762.

There is merit in the appellant's arson defense in this case. Like *Manis*, it is clear that the fire was arson-induced. Here, the facts in dispute are as to the party responsible.

During the initial arson investigation, appellee Conti requested, and was given, a series of polygraph examinations. The appellee was tested three times. Each time he was tested, the polygraph results indicated that the appellee was not being truthful when he denied having advance knowledge that his home would be destroyed. Appellant's third proposition of error states that the trial court erred in refusing to allow this evidence to be presented to the jury.

### V.

We are not in complete agreement with the appellant on the treatment polygraph results are to be given in such disputes. We are aware that some jurisdictions have permitted polygraph evidence to be presented to the jury in similar cases.[1] However, in *Hames v. Anderson*, Okl., 571 P.2d 831, 833 (1977), we stated that "any reference to [polygraph tests] in the presence of the jury ... is discouraged". Our courts have held that the introduction of polygraph results through argument of counsel is reversible error, even without a timely objection. *Hennessee v. Mathis*, Okl.App. 737 P.2d 958 (1987); See also: *State v. Cook*, Okl.Cr., 574 P.2d 1073 (1978). Appellant has not provided us with any evidence suggesting that these tests are more reliable or that the prejudicial effect of polygraph evidence has been overcome to any greater degree than when the above cases were decided.

However, we do believe that the trial court should have taken the polygraph results into account when considering the appellant's motion for a directed verdict. In that regard, we find the reasoning of

---

1. See, e.g., *Moss v. Nationwide Mutual Insurance Co.*, 24 Ohio App.3d 145, 493 N.E.2d 969 (1985); *Moskos v. National Ben Franklin Insurance Co.*, 60 Ill.App.3rd 130, 17 Ill.Dec. 389, 376 N.E.2d 388 (1978); *State v. Dorsey*, 88 N.M. 184, 539 P.2d 204 (1975).

Appeals Court of Illinois persuasive when, in a similar case, that court said:

> "the results of the examination were presented to the circuit court, not on the issue of the plaintiff's responsibility for the fire, but on the question of the defendant's state of mind—that is, whether the defendants, upon consideration of the results of that test, had a reasonable basis for concluding that the plaintiff was the arsonist. Whether the defendants were correct or incorrect, and whether the test results were accurate or inaccurate is irrelevant. The point is that the **polygraph evidence was relevant only to establish that the defendants did not act in bad faith** in contending that the plaintiff committed an arson. Accordingly, it was not error to consider this evidence in passing upon the motion for summary judgment." *Moskos v. National Ben Franklin Insurance Co.*, 60 Ill.App.3rd 130 [17 Ill. Dec. 389, 392], 376 N.E.2d 388, 391 (1978). (Citations omitted) (emphasis added).

■ The uncontested facts before the trial court suggested appellee's possible involvement in that: (1) appellee's loss was the result of an arson; (2) appellee could not pass a series of polygraph tests he himself had requested; and (3), physical evidence at the scene, (gasoline cans). The aggregate of these factors demonstrate that the appellant's actions in withholding payment on the claim were reasonable. Here, there was a legitimate dispute with respect to who was responsible for the arson. The action of the company must be assessed in light of all facts known or knowable concerning the claim *at the time plaintiff requested the company to perform its contractual obligation. Buzzard v. McDanel*, Okl., 736 P.2d 157 (1987). Therefore, we hold that it was error to submit the issues of bad faith and punitive damages to the jury. See e.g.: *Manis v. Hartford Fire Insurance Co.*, 681 P.2d at 762; *Sooner Foods, Inc. v. Eggleston*, Okl., 412 P.2d 621 (1966).[2]

## VI.

■ Lastly, the appellant argues that the trial court abused its discretion when it granted the appellee's motion for attorney fees. The appellant's argument is based on the perception that the guidelines set out in *State, ex rel., Burk v. City of Oklahoma City*, Okl., 598 P.2d 659 (1979) are mandatory, and that failure of counsel to follow those documentation guidelines prohibits an award of attorney fees.

The precise language from *Burk* is that: "Attorneys in this state *should* be required to present ... detailed time records ..." and that "lawyers who seek an award of attorney fees *should* offer evidence relating to one or more of the criteria ..." set forth in the Code of Professional Responsibility. 598 P.2d at 663 (emphasis added).

One of the reasons behind our statement in *Burk* was to ensure that a trial court, and later the reviewing court, have an adequate record upon which to judge the reasonableness of an attorney fee award. Given such a record, the limited issue on appeal is whether or not the trial court abused its discretion in allowing a clearly excessive award or refusing an award. *Burk*, supra, at 663. Here, Ransdell provided a recapitulation of his hours, based upon notes included in his trial notes. Co-counsel Johnson, on the other hand, provided daily, detailed, time sheets. Testimony showed that Ransdell's recap did not include all of the time spent in this matter, while Johnson's sheets reflected some duplication. The court made the proper adjustments and awarded Johnson a reduced amount. The court also considered the testimony presented with respect to Ransdell's claim for compensation, in conjunction with the elements from the Code of Professional Responsibility, and concluded that an award to Ransdell calculated at

---

**2.** Our holding does not suggest that an insurer may require, or in any way coerce, an insured to "volunteer" for a polygraph examination. To the contrary, our holding today is limited solely to the unique facts of this case. This record suggests that appellee Conti, without regard to considerations of insurance, asked for and submitted to the polygraph examinations solely as an aid to the investigation and as an accomodation to the investigating authorities.

$150.00 per hour was reasonable. Based on this record, we are unable to find an abuse of discretion in the court's award. This assignment of error must fail.

## VII.

 We hold that it was error for the trial court to deny the appellant's motion for a directed verdict on the issue of bad faith in an insurance settlement and punitive damages. See: *Manis v. Hartford Fire Insurance Company*, Okl., 681 P.2d 760 (1984). Accordingly, we also hold that a trial court may, when ruling on a motion for directed verdict, summary judgment, or motion to dismiss, in a cause of action for bad faith insurance settlement which is defended on the grounds of arson, consider the results of a voluntary polygraph examination as an element tending to show the reasonableness of the insurer's conduct. We remain committed, however, to the rule that it is error to allow the jury to hear such evidence. Polygraph results are relevant *only as a factor* tending to show an insurer's good faith. Nothing stated herein shall be construed as a license for insurers to require polygraph examinations or to withhold settlement if the insured does not ask to be tested.

Accordingly, the judgment of the trial court with respect to the appellee/plaintiff's cause of action for bad faith and his claim for punitive damages is REVERSED. The judgment of the trial court with respect to the cause of action for breach of contract is AFFIRMED. The award of attorneys fees is AFFIRMED.

OPALA, V.C.J., and LAVENDER, DOOLIN and SUMMERS, JJ., concur.

HARGRAVE, C.J., concurs in part, dissents in part and joins HODGES, J.

HODGES, J., concurs in part, dissents in part: I dissent to the Court's reversal of plaintiff's cause of action for bad faith and jury's verdict for punitive damages.

ALMA WILSON, J., concurs in part, dissents in part: There being no trial court error I would affirm the jury verdict.

KAUGER, J., concurs in part, dissents in part.