**Jaclyn G. OULDS, an individual, Plaintiff,**

v.

**PRINCIPAL MUTUAL LIFE INSURANCE COMPANY, an Iowa corporation, and Principal Financial Group, a Delaware corporation, Defendants.**

No. CIV–90–1989–B.

United States District Court, W.D. Oklahoma.

Dec. 9, 1991.

Richard L. Denney, Lydia J. Barrett, Denney & Barrett, Paul G. Smith, Norman, OK, Jim D. Loftis, Menzer, Entz, Loftis & Long, Oklahoma City, OK, for plaintiff.

Donald J. Gutteridge, James W. Berry, Kerr, Irvine, Rhodes & Ables, Oklahoma City, OK, Doug K. Butler, Figari & Davenport, Dallas, TX, for defendants.

ORDER ON DEFENDANTS' MOTION TO RECONSIDER

BOHANON, District Judge.

Before the court is Defendants, Principal Mutual Life Insurance Company and Principal Financial Group's ("Defendants"), motion to reconsider this court's September 5, 1991, order denying Defendants' prior motion for partial summary judgment on the issue of Defendants' alleged breach of the covenant of good faith and fair dealing implicit within the contract of insurance between Defendants and Plaintiff. Plaintiff filed her response and an amendment to her response on November 8, 1991. The parties have fully briefed the issues presented, and the court finds they are ready for determination. After careful review of the motion, supporting brief and appendices as well as Plaintiff's response with attached exhibits, the court finds merit in Defendants' motion. Consequently, upon reconsideration, the court finds that Defendants' motion for partial summary judgment should be granted.

Plaintiff, Jaclyn G. Oulds, filed her complaint against Defendants on December 12, 1990. In her complaint, Plaintiff alleged the Defendants had breached their contract of insurance and had further acted in bad faith thereby breaching the implied cove-

nant of good faith and fair dealing. Plaintiff also alleged a claim under Okla.Stat. tit. 36, § 1222, which was dismissed on September 5, 1991, in the same order Defendants now ask this court to reconsider. By order dated September 4, 1991, this court bifurcated the trials of Plaintiff's contract and tort claims. The breach of contract claim was tried to a jury from September 9 through September 11, 1991. During the trial of the case, Plaintiff twice moved for a directed verdict. Concluding that material facts were in dispute requiring determination by the jury, the court denied both motions. After deliberation, the jury returned a verdict in favor of Plaintiff on her contract claim, and the court entered judgment on the jury verdict on September 12, 1991, in the amount of $18,468.24. The only remaining issue is whether Defendants breached the duty of good faith and fair dealing. Defendants now ask this court to reconsider its prior order denying their motion for partial summary judgment and issue judgment in their favor on this issue based on the evidence adduced at trial.

Preliminarily, Plaintiff questions the propriety of Defendants filing a motion to reconsider citing an order by another judge of this district expressing his disapproval of litigants' use of the motion. *See* Order, 62 Okla.B.J. 108, 109 (Jan. 12, 1991). Although this court agrees with Judge Alley that motions to reconsider should not be filed with "regularity ... after a decision unfavorable to a party's case" has been issued, this case presents issues that are appropriately before the court on a motion to reconsider.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). On a summary judgment motion, the court is required to pierce the pleadings and evaluate the actual proof to determine whether summary judgment is appropriate. *Id.* at Advisory Committee Notes. In determining whether a genuine issue of material fact exists, all facts and inferences should be viewed in the light most favorable to the nonmoving party. *Burnette v. Dow Chemical Co.,* 849 F.2d 1269 (10th Cir.1988). When a motion for summary judgment is made, the party opposing the motion may not rest on the pleadings or on mere allegations or denials, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party must present sufficient evidence that her claim has merit. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).

## FACTS

At trial, Plaintiff testified that she had been having "some abdominal cramps and occasional diarrhea and some blood," Tr. at 9, in February or March of 1987, and consulted her family doctor, Dr. Donar, about the problem. He performed a sigmoidoscopy and referred Plaintiff to Dr. Vyas for a colonoscopy in October, 1987. Tr. at 9–10. Plaintiff further testified that based on the results of that test, Dr. Vyas "told me that I had ulcerative colitis and that if I took the medicine he prescribed, I would heal up and be fine." Tr. at 10. *See also* Tr. at 38. Dr. Vyas' records reflect that he treated Plaintiff on October 15, 1987, for acute colitis and on October 28, 1987, for ulcerative colitis. Dr. Vyas prescribed treatment with prednisone and Azulfidine and planned further studies on Plaintiff. Plaintiff testified that in November or December of 1987, she consulted Dr. Robinson, a gastroenterologist, for his diagnosis. His records revealed:

The patient was initially evaluated in 1987 at which time she was felt to have inflammatory bowel disease more likely to be Crohn's than ulcerative colitis. Colonoscopy was urged, but this was never done because of problems with insurance and also because the patient wasn't clearly sufficiently ill to qualify for the *Pentosa* Crohn's studies.

Plaintiff's Ex. 3.

Plaintiff herself affirmed that in 1987, her health insurance did not cover tests

such as the colonoscopy recommended by Dr. Robinson, and she had in fact been required to personally pay for the colonoscopy performed by Dr. Vyas. As a result, Plaintiff started "shopping around for new insurance," Tr. at 38–39, to replace her limited coverage insurance. The first application for insurance with Principal Mutual was completed in December, 1987.

On December 18, 1987, Diana Johnson, Plaintiff's business partner, on behalf of Dogs Beautiful, Inc., executed a Subscription to Trust and Request to Amend Group Policies. Pursuant to the prescription agreement, Dogs Beautiful, as the subscribing employer, requested group life, accidental death and dismemberment, and group comprehensive medical insurance for its employees and their dependents under the Principal Mutual planned employee program. Also on December 18, 1987, Plaintiff and Ms. Johnson completed applications for enrollment in a planned employee program through Dogs Beautiful for comprehensive health insurance. With the applications, Dogs Beautiful submitted its check in payment of the initial premiums. On January 17, 1988, Principal Mutual advised Dogs Beautiful that coverage under the planned employee program had been approved for Plaintiff and Ms. Johnson. Dogs Beautiful paid the premiums for their coverage under the program.

However, Plaintiff's application failed to reflect her medical history with respect to the diagnoses and treatment by Drs. Donar, Vyas and Robinson. Plaintiff testified that she informed Principal Mutual's agent, Ms. Anita Benjamin, on their first meeting that Dr. Vyas had diagnosed her condition as ulcerative colitis, and that she had an appointment to see a specialist. Tr. at 12. Ms. Benjamin suggested that "it would be better if I waited [to apply for insurance] or ... until I saw Dr. Robinson, then she would return and fill out the application." *Id.* Plaintiff testified that after she saw Dr. Robinson, she told Ms. Benjamin that Dr. Robinson said "that he could conclusively say I did not have ulcerative colitis." *Id.* As a result, since Ms. Benjamin was filling out the application, it was the agent's decision to fail to list Plaintiff's previous health problems.

However, Ms. Benjamin testified that she recorded the answers on the application just as Plaintiff answered them. Tr. Vol. 2 at 290–91. She further denied that Plaintiff had ever told her about Dr. Vyas' performing a colonoscopy and his subsequent diagnosis of ulcerative colitis. Ms. Benjamin stated that Plaintiff said that she had gone to Dr. Robinson only for an annual check-up. Due to the discrepancies in the testimony, the court determined that a genuine issue of fact was presented concerning whether or not Principal's agent, Ms. Benjamin, had knowledge of Plaintiff's health condition, and whether that knowledge, if any, should be imputed to Principal Mutual.

By letter dated December 21, 1988, Principal Mutual advised Dogs Beautiful that effective February 1, 1989, there would be a substantial increase in the premium rates. As a result, on January 14, 1989, Plaintiff and Ms. Johnson completed Subscriptions to Trust and Enrollment Forms for term life and accident and sickness insurance with Principal Mutual under the Comprehensive Health Insurance Plan Trust ("Health Edge Plan"). In her application, Plaintiff was asked the following questions:

2. Is anyone now getting or thinking about getting medical treatment or taking any medicine, drugs, pills, shots, etc.?

3. Has anyone been to or consulted a doctor, chiropractor, or any medical specialist or had blood tests or other medical tests done in the past 5 years?

4. Has anyone been hospitalized or been told that they need to have medical tests, have surgery, or to be hospitalized?

. . . .

7. Has anyone ever had gall bladder problems, ulcers, diarrhea, colitis, other digestive problems, hepatitis, cirrhosis, or liver problems?

Plaintiff's Ex. 1, a copy of the application, reflects a "no" answer to questions num-

ber 4 and 7. Questions 2 and 3 are answered "yes", but in the explanation section the only treatments listed were for flu, bronchitis and allergies. The application further includes a paragraph which provides:

> I represent all information, statements and answers recorded on the front and back, or attached to this enrollment form are full, correct, and true to the best of my knowledge. I agree that a photostat of this form is as valid as the original. I understand that omissions or misstatements regarding age or medical history, could cause an otherwise valid claim to be denied and/or void the insurance, if issued.

Plaintiff's signature is affixed at the bottom of the application.

As in taking the previous application, when Plaintiff and Ms. Johnson completed applications for coverage under the Health Edge Plan in January, 1989, Ms. Benjamin came out to their place of business to complete new applications. With regard to this meeting, Plaintiff testified that Ms. Benjamin told her, "All I need to know is any illnesses or doctors you have seen in the last year." Tr. at 17. Plaintiff further testified that she asked Ms. Benjamin at least "a couple of times" if she was sure they had to go back only one year, and that Ms. Benjamin responded that the company would refer back to the 1987 application if it needed more information. Tr. at 18.

An underwriter for Principal Mutual, Ms. Ann Jesse, testified that the company would not have underwritten the policy if it had known of Plaintiff's medical history. She opined that based on her review of Plaintiff's medical records and application as well as her knowledge of Principal Mutual's underwriting policies, "if we had known of the medical history omitted from the application, we would have declined her coverage." Tr. at 425. Even presented with conflicting diagnoses, such as Dr. Vyas' diagnosis of ulcerative colitis and Dr. Robinson's conclusive determination that Plaintiff did not suffer from ulcerative colitis, Ms. Jesse testified that Principal Mutu-

al would still not have underwritten Plaintiff's coverage. Tr. at 427.

Based on Plaintiff's application answers, Principal Mutual requested that she complete supplementary questionnaires regarding those conditions specifically identified on the application. Plaintiff complied with this request on February 8, 1989. By letter dated March 2, 1989, Principal Mutual advised Oulds that, effective February 1, 1989, she was covered under Principal Mutual's group medical expense policy no. GME 1495 RC3.

Commencing in August and September, 1989, Principal Mutual began receiving claim forms from certain of Plaintiff's medical care providers and pharmacists. As part of its investigation of the claim, Principal Mutual requested medical records from numerous of the providers identified in the claim information submitted to it. The medical records obtained by Principal Mutual during this review revealed Plaintiff's significant medical history. By letter dated June 5, 1990, Principal Mutual notified Plaintiff of its decision to rescind her coverage based on its contention that Plaintiff had failed to disclose material medical information in her application.

Plaintiff claimed that Principal Mutual accepted the premiums on her account after rescission, thus making the rescission ineffective. However, there was evidence presented at trial that the premiums were paid by automatic withdrawal from the account of Dogs Beautiful, on which Plaintiff and Diana Johnson were joint signators. Tr. at 33. At the time Principal Mutual notified Plaintiff that her coverage was rescinded, it refunded all premiums paid to date. Plaintiff testified that she sent the refund check back to Principal Mutual and continued to send premiums. Tr. at 30–31. Further evidence demonstrated that Principal Mutual had applied the premium amounts to Ms. Johnson's account. Tr. at 110–11.

## DISCUSSION

At trial, the factual issues before the jury were (1) whether Plaintiff suffered from a medical condition or had prior medi-

cal history which was material to Principal's underwriting risks; (2) whether Plaintiff disclosed that medical history to Principal Mutual through its soliciting agent, Anita Benjamin; and (3) whether Principal Mutual properly rescinded the policy of insurance. Defendants argue that there was conflicting evidence with regard to each of these factual issues and, based on the evidence, a reasonable jury could have found in their favor. Consequently, Plaintiff's tort cause of action for breach of the covenant of good faith and fair dealing will not lie under the applicable Oklahoma law.

In *Christian v. American Home Assur. Co.*, 577 P.2d 899 (Okla.1977), the Oklahoma Supreme Court recognized the duty of an insurer to deal fairly and in good faith with its insured. Violation of that duty gives rise to an action in tort for which an award of consequential, and possibly punitive, damages is appropriate. The court stated:

> We recognize that there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, tort liability may be imposed only where there is a clear showing that the insurer UNREASONABLY, AND IN BAD FAITH, withholds payment of the claims of its insured.

*Id.* at 905 (emphasis added). At issue in the *Christian* case were proceeds from a disability policy for which it became apparent at trial that the insurer did not have, and had never had, a defense to the insured's claim. *Id.* at 900. Based on the lack of defense, the court found that the insured had stated a claim for bad faith denial of his claim.

In a later case, the Oklahoma Supreme Court refined the rule in *Christian*. The insurer in *Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760 (Okla.1984), had denied payment on a claim for proceeds under a fire policy covering the building and contents of the plaintiff's business. The insurer denied

that the fire was accidental and alleged that the fire was either caused or procured by the plaintiff. Coverage was therefore denied under the terms of the policy. The insured sued for the total amount of the coverage as well as tort and punitive damages for bad faith denial of his claim. The trial court awarded tort and punitive damages, and the insurer appealed the punitive damage award.

On appeal, the Court distinguished the facts of the *Christian* case stating:

> It cannot be said as it was in *Christian* that it was apparent that defendants never had a valid defense to plaintiff's claim. . . . Facts were in dispute as to the cause of the fire. The insurers had a right to have this dispute settled in a judicial forum. A *Christian* cause of action will not lie where there is a legitimate dispute.

*Manis*, 681 P.2d at 762. The court further found that "[i]nsurance companies have the right to dispute a claim in good faith." *Id.*

In a more recent case, *Conti v. Republic Underwriters Ins. Co.*, 782 P.2d 1357, 1362 (Okla.1989), the Oklahoma Supreme Court stated:

> The uncontested facts before the trial court suggested appellee's possible involvement in that: (1) appellee's loss was the result of an arson; (2) appellee could not pass a series of polygraph test he himself had requested; and (3) physical evidence at the scene (gasoline cans). The aggregate of these factors demonstrate that the appellant's actions in withholding payment on the claim were reasonable. Here, there was a legitimate dispute with respect to who was responsible for the arson. The action of the company must be assessed in light of all facts known or knowable concerning the claim at the time plaintiff requested the company to perform its contractual obligations. . . . Therefore, we hold that it was error to submit the issues of bad faith and punitive damages to the jury.

In the present case, the evidence adduced at trial revealed a legitimate factual and legal controversy regarding coverage. Principal Mutual's claim to rescind Plain-

tiff's coverage under the policy was supported by evidence which raised a legitimate factual issue for the jury. Even though the jury found in Plaintiff's favor, this court finds that there was clearly evidence submitted during the trial which, if believed by the jury, could have supported a jury finding in favor of Defendants. Consequently, this court concludes that, as a matter of law, Plaintiff has not and cannot meet her burden under *Christian* "that [Principal Mutual] unreasonably, and in bad faith, withh[eld] payment of the claim of its insured." *Christian*, 577 P.2d at 904–05.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendants, Principal Mutual Life Insurance Company and Principal Financial Group's, motion to reconsider is GRANTED. Accordingly, Plaintiff's tort claim for breach of the covenant of good faith and fair dealing is DISMISSED.