992 F.2d 1223
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Terry ROSE and Shelly Rose, Plaintiffs-Appellees,
v.
PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY,
Defendant-Appellant.
 No. 91-6361.
 United States Court of Appeals, Tenth Circuit.
 April 28, 1993.
 
 1
 Before MOORE and BRORBY, Circuit Judges, and VAN BEBBER,* District Judge.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 VAN BEBBER, District Judge.
 
 
 4
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 5
 Defendant-appellant Prudential Property and Casualty Insurance Co. (Prudential) appeals the district court's denial of its motion for directed verdict on the issue of bad faith in a fire loss claim. Because we find there was sufficient evidence to support the jury's verdict, we affirm.
 
 
 6
 On February 7, 1990, fire destroyed the home of plaintiffs-appellees Terry and Shelly Rose. On that date, the Roses were scheduled for their final hearing in a divorce proceeding. Shelly Rose completed her work shift at 7:00 a.m. and returned home to change before the 8:30 a.m. hearing. Shortly thereafter, smoke was seen coming out of the Rose household and the fire department was called. The ensuing fire destroyed the home, requiring large amounts of water during the five-hour effort to extinguish the blaze.
 
 
 7
 Prudential sent its fire investigator, Jack Yates, to the Rose home. Based on burn patterns and the lack of any obvious accidental source, the expert concluded that the fire had been intentionally set. The samples he collected, however, revealed no evidence of accelerants when examined with a highly sensitive gas chromatograph. The Roses also hired a cause and origin expert to investigate the fire. Their expert concluded that there was no evidence of arson, and identified three potential accidental sources of the fire. Although this report was sent to Prudential, the insurer never contacted the Roses' investigator.
 
 
 8
 Shortly after the fire, Shelly Rose disclosed, in a recorded conversation with the insurer, that she had been in the house immediately before the fire. The insurer incorrectly transcribed the recording, however, reporting that Shelly Rose denied being in the house. When she later told others that she had been in the home that morning, Prudential used this discrepancy to support its claim that Ms. Rose had misrepresented her whereabouts and may have been responsible for setting the fire.
 
 
 9
 Prudential then hired a private investigator to gather data about its insureds. Prior to the fire, Shelly Rose had indicated that she was experiencing financial difficulties because of the divorce and had requested a bank loan. Although the investigator spoke with witnesses concerning Ms. Rose's financial situation, no interviews were conducted of several firefighters who had personally witnessed the fire inside and outside the house. Six months after the fire, Prudential denied the Roses' claim, alleging that they had intentionally set fire to their home and had concealed and misrepresented material facts concerning their loss.
 
 
 10
 Terry and Shelly Rose brought an action against Prudential in the United States District Court for the Western District of Oklahoma, alleging breach of contract and bad faith. At the conclusion of the Roses' case, and at the close of all the evidence, Prudential moved for a directed verdict as to whether the issue of bad faith should go to the jury. The district court denied these motions, finding the evidence sufficient to submit the issue of bad faith to the trier of fact. The jury returned a verdict in favor of the Roses for actual damages for breach of contract in the amount of $62,934.15. The jury also returned a verdict in favor of the Roses on the bad faith claim, awarding $45,000 for bad faith consequential damages and $45,000 for bad faith punitive damages. Prudential's motion for judgment notwithstanding the verdict was denied, and this appeal followed.
 
 
 11
 The grant or denial of a directed verdict in a diversity action is reviewed de novo on appeal, using the same federal law standard applied by the district court. Campbell v. Bartlett, 975 F.2d 1569, 1582 (10th Cir.1992). The court must determine "whether, viewing the evidence in the light most favorable to the nonmoving party, the evidence and the inferences to be drawn from it are so clear that reasonable minds could not differ on the conclusion." Guilfoyle ex rel. Wild v. Missouri, Kan. & Tex. R.R., 812 F.2d 1290, 1292 (10th Cir.1987). A directed verdict is proper "only when the evidence is so patently in favor of the moving party that a jury verdict in favor of the party opposing the motion would be improper." Pytlik v. Professional Resources, Ltd., 887 F.2d 1371, 1380 (10th Cir.1989).
 
 
 12
 Under Oklahoma law, an insurer must pay a claim promptly unless it has a reasonable belief that the claim is legally or factually insufficient. Buzzard v. Farmers Ins. Co., 824 P.2d 1105, 1109 (Okla.1991). The "decisive question" is whether the insurer had a " 'good faith belief, at the time its performance was requested, that it had justifiable reason for withholding payment under the policy.' " Id. (quoting Buzzard v. McDanel, 736 P.2d 157, 159 (Okla.1987)) (emphasis in original).
 
 
 13
 "To determine the validity of the claim, the insurer must conduct an investigation reasonably appropriate under the circumstances." Id. "If there is conflicting evidence as to the reasonableness of the insurer's actions from which different inferences may be drawn, 'then what is reasonable is always a question to be determined by the trier of fact.' " Conti v. Republic Underwriters Ins. Co., 782 P.2d 1357, 1360-61 (Okla.1989) (quoting McCorkle v. Great Atlantic Ins. Co., 637 P.2d 583, 587 (Okla.1981)) (emphasis in original).
 
 
 14
 Here, there is evidence that Prudential acted unreasonably in denying the Roses' claim. The insurer's decision was premised solely upon the opinion of its cause and origin investigator that accelerants were used to intentionally set the fire. This opinion, in turn, rested only upon burn patterns. Use of sensitive state-of-the-art equipment did not reveal the presence of accelerants. Because such burn patterns could have resulted from several different sources, including materials from the roof or items stored in the attic, they alone did not provide very strong evidence of arson.[1]
 
 
 15
 Knowing that the arson evidence was weak, Prudential conducted little, if any, additional investigation into the fire. It did not contact the Roses' cause and origin expert after receiving his report identifying three potential accidental causes of the fire. It did not interview firefighter Blackwell, who was the first disinterested eyewitness inside the Rose home, or firefighter Jeff Stone, one of the first to arrive on the scene. An interview with these firefighters, in fact, would have revealed physical evidence which contradicted Yates' opinion as to the origin of the house fire.[2]
 
 
 16
 Moreover, Prudential's creation of a discrepancy in Shelly Rose's statements regarding her whereabouts immediately prior to the fire, and its reliance upon this discrepancy to deny the claim, raise a question as to the insurer's good faith. The record contains no evidence that Shelly Rose ever altered her story. Similarly, in assessing Ms. Rose's financial motivation for committing arson, it does not appear that Prudential considered that she was to obtain sole ownership of the house through the divorce proceeding. Had this fire happened even a day later, Shelly Rose would have been entitled to recover twice as much. Failure to consider this may indicate a bad faith decision to withhold payment.
 
 
 17
 Finally, a jury could find it unreasonable for Prudential to wait until August to deny the claim, when the insurer received Yates' report of arson by March 5, and had hired a law firm by March 7. Prudential's conduct in sending Yates' report to Fire Marshal Roe just before Roe's deposition, approximately fifteen months after he had requested a copy, while not forwarding a copy of the Roses' expert's report, is also suspect. For these reasons, we hold that the evidence was sufficient to create a factual dispute as to Prudential's reasonableness in denying the Roses' claim.
 
 
 18
 Prudential argues that because it presented evidence of arson, opportunity, and motive, its denial of the Roses' claim was reasonable as a matter of law, citing Conti v. Republic Underwriters Insurance Co., 782 P.2d 1357 (Okla.1989), and Manis v. Hartford Fire Insurance Co., 681 P.2d 760 (Okla.1984). Both Conti and Manis held that when there was a legitimate dispute as to the insured's right to recover, they failed to meet their burden of proving unreasonableness, and the insurer was insulated from a claim of bad faith. As the court in Conti emphasized, "[t]he crucial consideration ... [is] the relative merit in the evidence supporting the defense of arson." 782 P.2d at 1361.
 
 
 19
 Here, the evidence of arson is not nearly as strong as in Conti or Manis. Instead, the facts in this case are much closer to those in McCoy v. Oklahoma Farm Bureau Mutual Insurance Co., 841 P.2d 568 (Okla.1992), in which the Oklahoma Supreme Court held it proper to submit to the jury a case where, despite an expert's opinion of arson, no evidence of an accelerant was found; the insured's experts did not find any signs of arson; the firefighters did not see floor fires or initial flames; and the insurer waited 240 days to deny the claim. We conclude, based on the evidence, that Manis and Conti do not control this case.
 
 
 20
 We also conclude that the testimony and evidence permit the inference that Prudential's conduct was malicious, justifying an award of punitive damages. Malice may be shown when an insurer's conduct evidences indifference to or a conscious disregard of its insured's rights. McCorkle, 637 P.2d at 586. Here, the insurer knew that the Roses were experiencing financial difficulties, that they had signed a contract for a new home, and that a denial of their claim would impose financial hardship. Prudential also knew that Shelly Rose and her two children had lost all of their personal belongings in the fire. To delay denial of the claim for six months without making any concerted effort to investigate the fire may be viewed as a reckless disregard for their rights. Prudential was also aware that Shelly Rose worked for a law enforcement agency and that an accusation of arson might, as here, cause her to lose her job. Because Prudential's failure to investigate and promptly settle the Roses' claim entitled the jury to infer malice, the punitive damages claim was properly submitted to the jury. See, e.g., Buzzard, 824 P.2d at 115-16; see also Timmons v. Royal Globe Ins. Co., 653 P.2d 907, 917-18 (Okla.1982).[3]
 
 
 21
 The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.
 
 
 
 *
 Honorable G. Thomas Van Bebber, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 At trial, Yates emphasized the difficulty that the firefighters experienced in extinguishing the blaze to support his belief that the fire was set. Yates admitted, however, that he did not learn of this difficulty until he read the firefighters' depositions, which were taken after Prudential denied the claim. Appellant's App., Vol. 2, pp. 176-77. Information not relied upon by the insurer in denying the claim is not relevant in a bad faith action. Buzzard, 824 P.2d at 1114
 
 
 [2]
 Yates theorized that the fire was set by pouring accelerants on the floor of the second story. At trial, Blackwell testified that he saw no flames on the second story floor, and that the only glow he saw was on the ceiling or high on the walls. Appellees' App., Ex. I, pp. 113-17. Stone testified that when he arrived at the fire, the flames appeared to be coming from the ceiling of the second story, not the floor. Id., Ex. G, p. 97
 
 
 [3]
 Because the certificate of service on Prudential's motion for judgment notwithstanding the verdict was undated, a question was raised concerning this court's jurisdiction. Examination of the record reveals that the motion was served and received within the ten-day period following entry of judgment, and that, therefore, we have jurisdiction over this appeal