**PUBLISH**
**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 15, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

ENABLE OKLAHOMA INTRASTATE
TRANSMISSION, LLC,

    Plaintiff - Appellant,

v.

25 FOOT WIDE EASEMENT, and right of
way for underground natural gas pipeline
lying and situated in the SW Quarter of the
SE Quarter and the West Half of the SE
Quarter of the SE Quarter in Section 28
Township 7 North Range 11 West of the
1.B. & M. in Caddo County, State of
Oklahoma; UNITED STATES OF
AMERICA, The Trustee as a matter of
affecting title to certain lands previously
allotted to Native Americans but held in
trust with certain restraints on alienation
and  presently held in trust for: The
Respective Heirs and Successors in Interest
of EMAUGOBAH, Caddo Allotment #84,
deceased, known heirs believed to be:
MATTHEW MARTIN WARE, and spouse
if any; BETTY LOU WARE, and spouse if
any; BENJAMIN BLACKSTAR, and
spouse if any; COREY WARE, and spouse
if any; PATRICIA WARE, and spouse if
any; JEAN ANN CARTER WARE, and
spouse if any; EDMOND L. CARTER, and
spouse if any; CARRI GWEN DUPONT,
and spouse if any; PATRICIA ANN
CARTER, and spouse if any; MARCIA W.
DAVILLA, and spouse if any;
MAYREDEAN MAMMEDATY
PALMER, and spouse if any; JANICE C.

No. 17-6188

MAMMEDATY, and spouse if any; KATINA DHERIE SMITH LIPTON, and spouse if any; RENA A. WARE, and spouse if any; WILLIAM KENDRIX WARE, and spouse if any; WESLEY WARE, III, and spouse if any; ANGELA RAE WARE SILVERHORN, and spouse if any; SAMUEL MARTIN WARE, and spouse if any; THOMAS BLACKSTAR, III, and spouse, if any all if living, and if any deceased, their respective heirs, executors, administrators, devisees, trustees, successors and assigns, immediate and remote, both known and unknown,

        Defendants - Appellees.

—————————————————————

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 5:15-CV-01250-M)**

—————————————————————

Submitted on the briefs:[*]

Barry L. Pickens, of Spencer Fane LLP, Overland Park, Kansas; and Andrew W. Lester, of Spencer Fane LLP, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Robert J. Troester, Acting United States Attorney; Tom D. Majors, Assistant United States Attorney; Conor Cleary and Alan Woodcock, Department of the Interior; Jeffrey H. Wood, Acting Assistant Attorney General; Eric Grant, Deputy Assistant Attorney General; and William B. Lazarus, Jeffrey S. Beelaert, and Mary Gabrielle Sprague, Attorneys, United States Department of Justice, Washington, D.C., for Defendant-Appellee United States of America.

Dustin T. Greene, of Kilpatrick Townsend & Stockton LLP, Winston-Salem, North Carolina; and Thurston H. Webb, of Kilpatrick Townsend & Stockton LLP, Atlanta, Georgia, for Defendants-Appellees Matthew Martin Ware; Betty Lou Ware; Benjamin

---

[*] After examining the briefs and appellate record, this panel determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case was therefore ordered submitted on the briefs on September 21, 2018.

Blackstar; Corey Ware; Patricia Ware; Jean Ann Carter Ware; Edmond L. Carter; Carri Gwen Dupont; Patricia Ann Carter; Marcia W. Davilla; Mayredean Mammedaty Palmer; Janice C. Mammedaty; Katina Dherie Smith Lipton; Rena A. Ware (Killsfirst); William Kendrix Ware; Wesley Ware, III; Angela Rae Ware Silverhorn; Samuel Martin Ware; and Thomas Blackstar, III.

_____

Before **LUCERO**, **McKAY**, and **MATHESON**, Circuit Judges.

_____

**McKAY**, Circuit Judge.

_____

Plaintiff Enable Oklahoma Intrastate Transmission, LLC, appeals the district court's dismissal of its case for lack of subject matter jurisdiction and for failure to join an indispensable party. Enable also challenges the amount of attorney fees the court awarded to the landowner defendants. Because our decision in *Public Service Company of New Mexico v. Barboan*, 857 F.3d 1101 (10th Cir. 2017), is dispositive of the subject matter jurisdiction issue, we affirm the district court's order dismissing the action. We likewise affirm the attorney fees award as consistent with Oklahoma law.

## I.

As discussed in *Barboan*, during the late nineteenth century, Congress began carving Indian reservations into allotments assigned to individual tribal members. 857 F.3d at 1104. With the passage of the 1887 General Allotment Act, or Dawes Act, the federal government began holding the allotments in trust for a period of twenty-five years, after which the allottee or his heirs would receive a fee patent to the land. *Id.* "As allotments began to create a checkerboard of tribal, individual

3

Indian, and individual non-Indian land interests, Congress passed several right-of-way statutes to help ensure that necessities such as telegraph lines and roads could continue without encumbrance." *Id.* at 1105. The 1934 Indian Reorganization Act ended the Allotment Era, indefinitely extending the twenty-five year trust period. *Id.* at 1105-06. Subsequent acts of Congress entitled Indian tribes to purchase interests in previously allotted lands, 25 U.S.C. § 2212, and to inherit small fractional interests in land through intestate descent, 25 U.S.C. § 2206(a)(2)(D). *Barboan*, 857 F.3d at 1106.

This case concerns a 136.25-acre tract of land located in Caddo County, Oklahoma, and referred to by the parties as Kiowa Allotment #84. The tract was originally allotted to Emaugobah, but as of April 2013, the land was held in trust by the United States for several individuals and the Kiowa Tribe of Oklahoma, which had an approximately 1.1% undivided ownership interest. In November 1980, the United States Department of the Interior Bureau of Indian Affairs granted a twenty-five-foot-wide easement, containing approximately 0.73 acres of land, to Producer's Gas Company for $1,925.00 to install and maintain a twenty-foot natural gas pipeline for a term of twenty years. In June 2002, Enogex Inc. wrote to the BIA seeking to acquire a new twenty-year easement for $3,080.00 over the same property to continue the operation and maintenance of the pipeline.

Some landowners withheld their consent to Enogex's right-of-way application, and in 2006 Enogex was required to pay a $1,098.35 trespass assessment for its continued operation of the pipeline without the easement. In June 2008, the local

4

BIA Superintendent notified the landowners that the Bureau had decided "to approve the new easement for Enogex for the reasons that it has been impracticable to obtain a majority of the ownership consent, the granting of the easement will not cause any injury to the land or the ownership, and to prevent a condemnation action in United States Federal Court." (Appellant's App. at 66-67.) The following month, several landowners appealed that decision to the BIA Regional Director and informed him they were rejecting Enogex's offer for the easement. One owner also wrote to the Superintendent asking her to withdraw her decision because it had been made "without informing the landowners or seeking their consent" and the majority of the known landowners had rejected Enogex's "offer and the seven and [a] half year old appraisal of the expired leases." (*Id.* at 69.)

In March 2010, the Regional Director issued his decision ruling on the landowners' appeal. The Director noted that, as of January 2010, Enogex had yet to make any payments for the right of way the Superintendent had granted. He also determined that the amount Enogex had offered and the Superintendent had approved for the easement "appear[ed] to be inadequate" and concluded that the Superintendent "lacked the authority to approve" the easement application without the landowners' consent. (*Id.* at 73.) Accordingly, the Director vacated the Superintendent's decision and stated, "If valid approval of a right of way for this tract is not timely secured, Enogex should be directed to move the pipeline off the subject property." (*Id.*)

5

Enogex did not appeal the Director's decision.  In November 2015, however, Enogex's successor in interest, Enable, filed suit in the United States District Court for the Western District of Oklahoma.  Enable's complaint asserted jurisdiction under 25 U.S.C. § 357 and sought to condemn the easement.  In January 2016, the landowners moved to dismiss Enable's complaint on the basis that the Kiowa Tribe's 1.1% ownership interest made it a required party under Fed. R. Civ. P. 19(a) and 71.1, but the tribe could not be joined because it retained sovereign immunity.  The landowners also argued § 357 did not allow for condemnation of land in which a tribe has a beneficial interest.  In March 2016, the United States filed its own motion to dismiss, joining the landowners' indispensable-party argument but focusing on whether § 357 allowed for condemnation of lands owned at least in part by a tribe.

The district court ruled on both motions in August 2016.  The court observed that § 357 would impart subject matter jurisdiction "if the tract at issue was owned solely by Indians to whom the tract had been allotted in severalty."  (Appellant's App. at 250-51.)  Because the Kiowa Tribe held a 1.1% interest in Kiowa Allotment #84, however, the court held that the tract was tribal land not subject to condemnation under § 357 and therefore § 357 did not convey subject matter jurisdiction over the case.  Considering the alternative indispensable-party argument, the court determined that the tribe was a required party to the action but could not be joined due to its sovereign immunity and concluded that "equity and good conscience mandate that this action should be dismissed."  (*Id.* at 252-55.)

6

In September 2016, the landowners filed a motion for costs and attorney fees pursuant to Okla. Stat. tit. 66, § 55(D). That same month, however, Enable filed a motion for new trial, urging that § 357 did allow condemnation of allotment lands in which a tribe "holds a fractional, non-divided interest" and asking the district court to hold the motion in abeyance until we issued our decision in *Barboan*. (Appellant's App. at 303-04, 315.) We issued our opinion in *Barboan* in May 2017, and in July 2017, the district court denied Enable's motion, concluding in light of *Barboan* "that it did not err in dismissing this case." (*Id.* at 356-57.)

The district court subsequently ruled on the landowners' motion for costs and attorney fees, concluding that costs were not recoverable under the Oklahoma statute but reasonable fees were. The court addressed Enable's argument that the landowners' claimed fees were unreasonable under *State of Oklahoma ex rel. Burk v. City of Oklahoma City*, 598 P.2d 659 (Okla. 1979), and *Lippoldt v. Cole*, 468 F.3d 1204 (10th Cir. 2006), because they were based on the attorneys' rates in their out-of-state (e.g., Washington, D.C.) offices rather than local Oklahoma rates. The court concluded the fees were reasonable given the landowners' inability to find qualified local counsel. Enable appealed.

## II.

On appeal, Enable first contends "[t]he district court erred by granting the Defendants' motions to dismiss for an alleged lack of subject matter jurisdiction or for an alleged failure to join a necessary party." (Appellant's Opening Br. at 9.) Enable also notes, however, it "presents this error out of an abundance of caution"

7

should the U.S. Supreme Court grant certiorari in *Barboan* or should this Court grant rehearing en banc of this opinion. (*Id.* at 10) Indeed, as the United States points out in its brief, *Barboan* is "binding circuit precedent that requires the dismissal of Enable's condemnation action." (United States Appellee's Br. at 21.) Moreover, the landowners filed a notice of supplemental authority in April 2018 informing this court that the Supreme Court had denied the petition for a writ of certiorari in *Barboan*.

That case addressed one question certified by the district court for interlocutory appeal: "[D]oes § 357 authorize condemnation against land in which the United States holds fee title in trust for an Indian tribe, when the tribe has a fractional beneficial interest in the parcel?" *Barboan*, 857 F.3d at 1108. Section 357 provides, "Lands allotted in severalty to Indians may be condemned for any public purpose under the laws of the State or Territory where located in the same manner as land owned in fee may be condemned . . . ." 25 U.S.C. § 357. We concluded in *Barboan* that this language authorizes "condemnation of any land parcel previously allotted and whose current beneficial owners are individual Indians," "[b]ut starkly absent from § 357's language is any similar authorization for tribal lands," which include allotted lands in which the United States holds any part in trust for a tribe. 857 F.3d at 1108, 1111.

A parcel's status as tribal land does not depend upon the size of the tribe's interest in the land. The two parcels at issue in *Barboan* involved a 13.6% and a 0.14% tribal interest, *id.* at 1110, and it is equally irrelevant that the land at issue here

8

involves only a 1.1% tribal interest. Because the tribe has an undivided ownership interest in this land, Kiowa Allotment #84 is tribal land not subject to condemnation under § 357 and the district court correctly dismissed Enable's action for lack of subject matter jurisdiction. As in *Barboan*, because we affirm the district court's decision on this basis, we need not consider whether the tribe was a necessary party to the action. *See id.* at 1107-08.

### III.

Enable next argues that "[t]he district court erred by granting Defendants' motion for an award of attorney fees based on the hourly rates charged by law firms in the region where defense counsel practice, instead of the hourly rates charged in Oklahoma." (Appellant's Opening Br. at 18.) We review a district court's award of attorney fees for an abuse of discretion, but review the court's underlying legal analysis de novo. *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005). The parties agree that Oklahoma law governs the award of fees in this case. Moreover, as the landowners point out, Enable does not question that Okla. Stat. tit. 66, § 55(D), authorizes attorney fees in a condemnation action such as this one "where the final judgment is that the real property cannot be acquired by condemnation."

Instead, Enable challenges the amount of attorney fees awarded by the district court, noting that we have observed, "When state law governs whether to award attorney fees, all agree that state law also governs how to calculate the amount." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d

9

455, 461 (10th Cir. 2017). Enable identifies *Burk* as Oklahoma's lead case on the reasonableness of fees. There, the Oklahoma Supreme Court adopted the lodestar method for determining attorney fees in common fund cases. *See Burk*, 598 P.2d at 660-62. The portion of *Burk* on which Enable focuses, however, is the court's statement that "[r]easonable value of services should be predicated on the standards within the local legal community." *Id.* at 663.

According to Enable, "the *Burk* rule" is "that an attorney fees award under Oklahoma law must be 'predicated on the standards within the local legal community.'" (Appellant's Opening Br. at 21 (quoting *Burk*, 598 P.2d at 663).) The landowners, however, assert that Enable "mischaracterizes *Burk*" by substituting "must" for "should." (Landowner Appellees' Br. at 31.) They point to the Oklahoma Supreme Court's subsequent decision in *Conti v. Republic Underwriters Insurance Co.*, 782 P.2d 1357 (Okla. 1989), as evidence that *Burk* does not prescribe stringent rules for determining attorney fee awards. *Conti* did not address the locality of fees, but rather whether the attorneys had sufficiently documented their work and whether their fees were reasonable in light of the factors set forth in Oklahoma's Code of Professional Responsibility. *See* 782 P.2d at 1362.

*Conti* framed the issue, based on the appellant's argument, as whether "the guidelines set out in [*Burk*] are mandatory, and . . . failure of counsel to follow those documentation guidelines prohibits an award of attorney fees." *Id.* The court observed, "The precise language from *Burk* is that: 'Attorneys in this state *should* be required to present . . . detailed time records . . .' and that 'lawyers who seek an

10

award of attorney fees *should* offer evidence relating to one or more of the criteria . . .' set forth in the Code of Professional Responsibility." *Id.* (quoting *Burk*, 598 P.2d at 663) (emphasis and alterations in *Conti*). Thus, the court held in *Conti* that the district court did not abuse its discretion in awarding fees to an attorney who had not kept detailed time sheets in accordance with the *Burk* guidelines. *Id.* at 1362-63. Enable argues *Conti* is inapplicable here because it concerned only *Burk*'s "documentation guidelines." (Appellant's Reply Br. at 8.) The Code of Professional Responsibility criteria referenced in *Conti*, however, include the fees normally charged in the locality for similar legal work, *see Burk*, 598 P.2d at 661-62, and *Conti* did not make distinctions among these criteria in holding that the *Burk* guidelines are not mandatory in determining an award of attorney fees. *See Conti*, 782 P.2d at 1362.

In support of its argument, Enable cites to *Morgan v. Galilean Health Enterprises, Inc.*, in which the Oklahoma Supreme Court, in response to an attorney fee award "*based solely* upon the provisions of the contingent-fee contract," stated, "Lawyers must present to the trial court detailed time records showing the work performed together with evidence of the reasonable value of different types of legal work based on local standards." 977 P.2d 357, 364-65 (Okla. 1998) (emphasis in original). Enable ignores the portion of this sentence referencing *Burk*'s documentation guidelines to suggest the locality of fees "remains a mandatory requirement" despite *Conti*. (Appellant's Reply Br. at 8-9.) *Morgan*, however, does

not support any distinction between those two portions of the *Burk* holding, nor does it purport to overrule *Conti*'s holding that the *Burk* guidelines are not mandatory.

In *Lippoldt*, we remarked that out-of-state fee rates may be applied if "the subject of the litigation is 'so unusual or requires such special skills' that only an out-of-state attorney possesses." 468 F.3d at 1225 (quoting *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983)). Enable argues Oklahoma has not expressly adopted this exception and we should therefore not apply it here. Notably, however, as the Oklahoma Supreme Court recognized in *Morgan*, *Burk* indicated Oklahoma courts could enhance fee awards by considering factors "taken from federal court practice" in addition to those listed in the Oklahoma Rules of Professional Responsibility. *Morgan*, 977 P.2d at 364; *see also Burk*, 598 P.2d at 661. Although *Burk* placed those factors in the context of the lodestar method for common fund fee awards, *see* 598 P.2d at 661, we are persuaded that *Burk* and its progeny are sufficiently flexible to allow for an attorney fee award based on prevailing rates where defense counsel is located rather than where the litigation occurs, under the proper circumstances.

Enable briefly disputes that this case presents appropriate circumstances for awarding attorney fees based on out-of-state rates. The district court's order awarding attorney fees in this case, however, specifically found that the landowners "could not afford to hire counsel and were unable to locate any counsel, let alone an attorney with expertise in Indian law, locally who would represent them." (Appellant's App. at 362.) In support of this conclusion, the court cited to the affidavit of the Executive Director of Oklahoma Indian Legal Services, in which the

12

Director stated the organization had found there was no one in Oklahoma who could represent the landowners given their need for pro bono representation in a case involving complex legal issues. "[W]e will reverse the district court's factual findings only if we have a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Praseuth*, 406 F.3d at 1257. We see no clear error in this case, and we cannot say the district court abused its discretion in awarding the fees it did here. *Cf. Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703-07 (3d Cir. 2005) (concluding district court's attorney fee award based on rates in counsel's location was not clearly erroneous given local attorneys' unwillingness to handle case without up-front payment of costs).

## IV.

For all of the foregoing reasons, we **AFFIRM** the district court's dismissal of this action for lack of subject matter jurisdiction. We also **AFFIRM** the district court's attorney fee award to the landowner defendants.