Madison McCORKLE, Jr., Appellee,

v.

GREAT ATLANTIC INSURANCE CO., of Delaware, a foreign insurance company, and Community Bank and Trust Company, an Oklahoma banking corporation, Appellants.

No. 53703.

Supreme Court of Oklahoma.

Nov. 3, 1981.

Jack B. Sellers Law Associates, Inc. by April Sellers White, Sapulpa, for appellee; Joe A. Moore, Memphis, Tenn., of counsel on the brief.

Ray H. Wilburn & Associates by Ray H. Wilburn and Dennis King (attys. of record on the appeal only), Tulsa, for appellant, Great Atlantic Ins. Co.

BARNES, Vice Chief Justice.

This case arises out of a fire-insurance contract wherein the insurer refused to pay the policy limits for fire damage to the insured's house. The insured brought suit alleging breach of contract, tortious bad-faith handling of his claim, and oppression and malice on the part of the insurance company. He sought actual and punitive damages.

The facts, which are largely undisputed, are as follows: The appellee bought a house for investment purposes. Although the house was valued at only $7,500.00 by the lender, the appellee renovated the house through his own efforts and through bartered-for labor and contracted labor for which he still owes $1,500.00. When he sought insurance coverage, the insurance agent valued the property at $15,000.00. The value of the house was evidently somewhat higher because witnesses for both the insured and the insurer at the trial placed the value in the range of $20,000.00. Nonetheless, appellant issued a fire-insurance policy for $15,000.00, with a $100.00 deductible.

The insured rented the house and shortly thereafter suffered a heart attack, necessitating a six-month recovery period. During his hospitalization there was extensive fire damage to the house. His insurer was contacted and two estimates for repairs were submitted. One was for $16,845.00, the other for $17,088.00.

The insurer never sent a proof-of-loss form but employed a contractor, frequently used by its company to make estimates, to make a third estimate. He estimated the damage at $6,629.52.

The $6,629.52 estimate made no allowance for water damage, although the contractor making the estimate admitted that the fire department had done "quite a lot of water damage," and no allowances for plumbing repairs, for exposing and inspecting electrical wiring, for replacement of broken windows, or replacement of damaged sheetrock walls in the living room, dining room, hall, kitchen, front bedroom, or utility room. The exterior of the house was to be "touched up" but not repainted. In short, this estimate was based on the premise that the fire was basically confined to the back bedroom and attic, that water-damaged areas would dry in time, and that the smoke damage could be patched and painted over.

The insurer's adjuster then reduced this estimate $2,000.00 for depreciation and offered to settle for $4,872.00. At trial he could give no rational basis for this reduction. The adjuster testified that he had not seen the house prior to the fire, had not talked to the agent who appraised the house prior to the issuance of the insurance policy or the contractor who made the $6,629.52 estimate. He based his offer on the purchase price of the house, not the renovated house on which the insurance policy was issued. He made no contact with any of the contractors who made estimates in an effort to resolve the disparity between appraised damage. No arbitration was sought. He denied having seen a proof-of-loss form although one was produced at trial bearing his signature and a notation withdrawing the settlement offer of $4,872.00.

Subsequently, because of the fire damage, the roof, living room and porch of the house collapsed, and the City of Tulsa ordered the house torn down. The house was bulldozed and the lot cleared.

The insured sued the insurer for $14,-900.00 damages, the policy limit minus the $100.00 deductible, plus $40,000.00 punitive damages, plus attorney fees pursuant to 36 O.S. §§ 1103, 1105 and 3629. The jury awarded actual damages of $10,000.00 and punitive damages of $10,000.00. The trial court awarded $5,000.00 attorney fees.

Appellant urges a reversal based on nine alleged errors. Additionally, it asks this court to reconsider *Christian v. Home Assurance Company*, 577 P.2d 899 (Okl.1978), and overrule it, or in the alternative to limit its application on the basis that the intentional tort of bad-faith recognized in *Christian* is violative of due process, and is, therefore, unconstitutional under the Fourteenth Amendment to the United States Constitution and Article Two, Section Seven, of the Oklahoma Constitution.

## I

■ Initially, the court notes that appellant Great Atlantic Insurance Company[1] alleged nine errors in its petition in error, but declines to brief all nine. Since this court as a general principle addresses only those issues properly and timely presented, argued and supported with authority, *Gaskins v. State ex rel. Dept. of Highways*, 425 P.2d 979 (Okl.1967), we will limit this review to those issues properly before us.

## II

■ The appellant states in Proposition Two:

THE TRIAL COURT ERRED IN OVERRULING GREAT ATLANTIC'S DEMURRER TO THE EVIDENCE BECAUSE THE PLAINTIFF NEVER PLED NOR PROVED A TORTIOUS

BREACH OF THE INSURANCE CONTRACT.

Inasmuch as the record shows that the appellant proceeded at trial to elicit evidence in support of its defense after it had demurred to appellee's evidence, this assignment of error is deemed waived. *Osburn v. Bendix Home Systems, Inc.*, 613 P.2d 445, 448 (Okl.1980), citing *Chicago, Rock Island and Pacific Railroad v. Kinsey*, 372 P.2d 863 (Okl.1962); *McMillan v. Lane Wood & Company*, 361 P.2d 487, 491 (Okl.1961); *Oklahoma City-Ada-Atoka Railroad Company v. Nickels*, 343 P.2d 1094, 1096 (Okl.1959). Our review will, therefore, be confined to the remaining issues.

## III

Appellant contends in Proposition Three:
THE INSTRUCTIONS GIVEN BY THE TRIAL COURT WERE DEFECTIVE IN THAT THEY FAILED TO STATE THE LAW SETTING FORTH A CAUSE OF ACTION FOR A TORTIOUS BREACH OF AN INSURANCE CONTRACT AND WERE SO ONE-SIDED AS TO BE PREJUDICIAL TO THE DEFENDANT.

Appellant submits that no single instruction was erroneous, but that the totality of the jury instructions had a cumulative effect that was prejudicial and fundamentally incomplete when read in conjunction with the record.

■ Appellant failed in the trial court to save exceptions to the instructions by proper objections and notations statutorily required by 12 O.S.1960 § 578.[2] Such failure requires our review to be limited to prejudicial error, erroneous statements of fundamental law, appearing upon the face of the instructions, and review of the entire record in an effort to discover latent errors is

---

1. The appellant Community Bank and Trust Company is a nominal party.

2. Title 12 O.S.1960 § 578 provides:
"A party excepting to the giving of instructions, or the refusal thereof, shall not be required to file a formal bill of exceptions; but it shall be sufficient to make objection thereto by dictating into the record in open court, out of the hearing of the jury, after the reading of all instructions, the number of the particular instruction that was requested, refused and is excepted to, or the number of the particular instruction given by the court that is excepted to. Provided, further, that the court shall furnish copies of the instructions to the plaintiff and defendant prior to the time said instructions are given by the court."

precluded.[3] In the instant case the questioned instructions contain no misstatement of any fundamental principle of law.

## IV

For its fourth proposition, the appellant argues:

THE PLAINTIFF DID NOT PROVIDE ANY PROOF TO SHOW THAT THE DENIAL OF ANY POLICY BENEFIT WAS DONE WITH OPPRESSION, FRAUD OR MALICE.

To the contrary, the record, much of which is summarized in the introduction, *supra*, and will not be repeated here, supports the verdict.

■ This court does not weigh evidence or correctness of findings of fact by the jury, *Akins v. Altus Newspaper, Inc.*, 609 P.2d 1263 (Okl.1977), but examines only to determine whether the evidence, together with permissible inferences to be drawn therefrom, reasonably sustains the jury's verdict and the judgment based thereon. *Osborn v. White Eagle Oil Co.*, 355 P.2d 1041 (Okl.1960). Under this standard and based on the record, this court finds sufficient evidence to affirm the jury's finding that appellant's conduct was unreasonable and malicious through an indifference to or conscious disregard of the appellee's rights and justifies the award of punitive damages. *Smith v. Johnston*, 591 P.2d 1260, 1264 (Okl.1979); *Christian v. American Home Assurance Company*, 577 P.2d 899,

904 (Okl.1978). We note that the punitive damages, together with actual damages awarded, total $20,000.00, the amount that appellant's own witness testified was a fair market value of the appellee's house prior to the fire damage.

## V

■ Appellant argues that the trial court erred in awarding attorney fees of $5,000.00 to appellee. The award of attorney fees to the prevailing party in a suit by an insured against the insurer is provided for by statute in Oklahoma. 36 O.S. (Supp.1981) § 3629(B). Furthermore, since appellant neither preserved error in objecting to the amount of attorney fees nor presented evidence in contradiction of the amount, but merely objected to the award of attorney fees, we hold that the amount of attorney fees is not subject to our review because any objection, which would have preserved this issue for appeal, was waived. *J. V. v. State Department of Institutions, Etc.*, 572 P.2d 1283 (Okl.1977).

## VI

■ Appellant in its next proposition states:

THE TORT OF BAD–FAITH BREACH OF CONTRACT SHOULD BE REJECTED IN OKLAHOMA OR LIMITED SO THAT IT DOES NOT APPLY TO CASES WHERE THE AMOUNT DUE IS UNASCERTAINED.

---

**3.** See *Mason v. McNeal*, 187 Okl. 31, 100 P.2d 451 (1939), wherein the court said:

"But without exception saved to the instruction as required by . . . 12 Okl.St.Ann. § 578, we are not at liberty to review the alleged error . . . except for fundamental errors of law. . . . *In determining the latter question we may not search beyond the instructions themselves.* To proceed beyond this point in our review would result in disregarding the plain terms of the statute last mentioned. . . . [The] general rule . . . that 'It is the duty of the trial court on its motion to properly instruct the jury upon the decisive issues made by the pleadings and the evidence introduced at the trial, and a failure so to do constitutes fundamental error . . .' *is suitable only to the occasion where the plaintiff in error has failed to submit his requested instructions in substitution for the alleged erroneous*

ones given by the court but has duly saved his exceptions to the latter as required by the statute aforesaid. In other words, failure of the plaintiff in error to submit correct instructions will not save the court's own instruction on review from prejudicial error if proper exceptions are noted in the record. . . . *But where, as here, no exceptions are saved, the review will be confined to prejudicial error, erroneous statement of fundamental law, appearing upon the face of the instruction. . . . In recognition of 12 O.S. § 578 we will not review the record further in an effort to discover latent errors. "* (Citations omitted) (Emphasis added) *Id.* at 452 and 453.

Accord, *National Tank Co. v. Scott*, 191 Okl. 613, 130 P.2d 316 (1942); and *Klaus v. Fleming*, 304 P.2d 990 (Okl.1956).

In asking this court to overrule or retreat from its holding in *Christian v. American Home Assurance Company*, 577 P.2d 899 (Okl.1978), the basic thrust of appellant's argument is that *Christian* destroys the balance of interests between the insurance industry and the consumer to the point of being unconstitutionally prejudicial to the insurance industry under the Fourteenth Amendment and Article Two, Section Seven, of Oklahoma's Constitution.

The appellant's argument is that fire-insurance claims inherently involve unascertained amounts due under the contract, that an insurance company has the constitutional right to have the amount due judicially determined, but that *Christian*, which recognizes the tort of bad faith and permits the assessment of punitive damages therefor, denies the insurance industry this right to its day in court and, therefore, due process of law. The appellant's position is that if the insurer litigates in good faith, it does so at the peril of having punitive damages assessed against it for unreasonably withholding payment due. Appellant further submits that if this court does not overrule *Christian*, it should at least limit it to apply only to health and accident coverage because the Oklahoma Legislature has mandated that benefits under health and accident coverage are to be paid immediately by the insurer upon submission of proof of loss on behalf of the insured; whereas, the Legislature makes time allowances for such coverage as fire insurance. In summary, the appellant wants to void the remedy to the purchaser of fire and uninsured-motorist insurance of seeking punitive damages from the insurer who has acted in bad faith by unreasonably withholding payments due under a policy.

This court has carefully reconsidered *Christian* and believes that it has provided procedural due process for the insurance industry and that the law of *Christian* does not unfairly protect the consumer to the prejudice of the insurance industry.

At the outset it is noted that a party prosecuting a claim of bad faith must plead the elements of the tort and he/she has the burden of proof. These pleadings and proof requirements are the same as in other lawsuits.

Second, the essence of the intentional tort of bad faith with regard to the insurance industry is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy, and if there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case.

Third, this court in recognizing the independent and intentional tort of bad faith, said in *Christian*:

"We do not hold that an insurer who resists and litigates a claim made by its insured does so at its peril that if it loses the suit or suffers a judgment against it for a larger amount than it had offered in payment, it will be held to have breached its duty to act fairly and in good faith and thus be liable in tort.

"We recognize that there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, *tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured.*"

*Id.* at 904–905.

Fourth, with regard to punitive damages, in *Christian* we said:

"We approve and adopt the rule that an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential *and, in a proper case, punitive, damages may be sought.*"

*Id.* at 904. In qualifying our approval of punitive damages, with the words "in a

proper case" and "may", we reject appellant's argument that *Christian* stands for our indiscriminate approval of punitive damages. We trust that the trier of fact will award them only in a proper case, with the focus always on the *unreasonableness* of the insurer's conduct.

We reject the appellant's argument that insurance claims in. which the amount due is unliquidated should be exempt from the possibility of paying punitive damages or that this rejection places an undue burden on the insurer of first-party coverage.

And we reject the argument that by providing the consumer with a remedy against the bad-faith conduct of his/her insurer, we deny the insurer its access to the court by arbitrarily punishing it for exercising its constitutional right to litigate a good-faith dispute.

We believe that the purchaser of insurance does not contract to obtain a commercial advantage but to protect himself/herself against the risks of accidental losses and the mental stress which could result from such losses. Therefore, we think one of the primary reasons a consumer purchases any type of insurance (and the insurance industry knows this) is the peace of mind and security that it provides in the event of loss.

We affirm our position in *Christian* and hold that it applies to all types of insurance companies.

### VII

■ In its reply brief, appellant raised for the first time the proposition that "singl[ing] out insurance companies and impos[ing] tort liability [on them alone] for a breach of contract duty which is present in all contracts" is "a denial of ... equal protection under both the United States and Oklahoma Constitutions." We will not address the equal-protection argument for the reason that it was not timely raised. *Joe Brown Co., Inc., v. Best*, 601 P.2d 755, 757–758 (Okl.App.1979), citing *Green v. Oklahoma Tax Commission*, 188 Okl. 168, 107 P.2d 180 (1940).

AFFIRMED.

IRWIN, C. J., and HODGES, LAVENDER, SIMMS, DOOLIN, HARGRAVE and OPALA, JJ., concur.