Debra J. ALSOBROOK, Appellee,

v.

NATIONAL TRAVELERS LIFE
INSURANCE COMPANY, an
Iowa Corporation, Appellant.

No. 77620.

Court of Appeals of Oklahoma,
Division No. I.

Dec. 8, 1992.

Rehearing Denied Feb. 2, 1993.

Certiorari Denied April 20, 1993.

S. Brent Bahner, Ardmore, for appellant.

Diane L. Worsham, Ardmore, for appellee.

### MEMORANDUM OPINION

GARRETT, Judge:

Appellant seeks review of a jury verdict and judgment in favor of Appellee, Debra J. Alsobrook (Debra), and against Appellant, National Travelers Life Insurance Company (Company), in her action against Company. The jury awarded damages in the amount of $6,239.00 under the policy; $20,000.00 for failing to deal fairly and in good faith; and, $100,000.00 in punitive damages.

Debra alleged Company's bad faith in denying health insurance claims for herself and her two children. Company contends Debra's claims were for complaints which constituted a pre-existing condition, excluded under the provisions of her policy. It argues the several diagnoses she received from a gynecologist, Dr. Funnell, were related to a condition for which she had received treatment before April 1, 1989, the effective date of her policy.

Debra obtained insurance coverage with Company when she learned the group health plan through her husband's employment was being terminated. She called Company's agent, Tim Longest (Longest), who had sold an automobile insurance policy to her and her husband, to obtain health insurance. On February 28, 1989, a short-term policy went into effect for thirty days.

The long-term policy was to go into effect on April 1, 1989. Debra testified she had made an appointment with Dr. Funnell for March 17, 1989, and called Longest to determine whether the appointment, and any consequential treatment, would be covered under the new policy. She stated she told Longest she had an appointment with a gynecologist, because she was having some problems, and asked if "something further resulted from this appointment, would it be covered under that short-term policy or should I wait until after the long-term policy went into effect." She testified that he said "he didn't know, that he would call and find out and call me back.... He called me back and he said it would probably be better to wait until after April 1st." Debra then changed her appointment with Dr. Funnell to April 3, 1989.

As to Debra's claims, she contends she went to Dr. Funnell because of pain in her breasts. She related to him a history of heavy and painful menstrual periods for which she had been treated with birth control pills at one time by another doctor. Dr. Funnell diagnosed Debra as having endometriosis, adenomyosis, fibrocystic breast disease, retro-position of the uterus, hormone imbalance, and post-tubal syndrome. Dr. Funnell also advised her at that time that she should consider having a hysterectomy. Debra testified she had never before been diagnosed with any of these conditions.

Debra's policy contains the following definition of "pre-existing condition":

> 'Pre-existing condition' means the existence of symptoms which would cause an ordinary prudent person to seek diagnosis, care or treatment within a five-year period preceding the effective date of the coverage of the insured person. It also means a condition for which medical advice or treatment was recommended by a doctor or received from a doctor within a five-year period preceding the effective date of the insured person.

Under the "Exceptions and Limitations" section of the policy is included the following:

No benefits are payable under this policy for:

> .    .    .    .    .
>
> 7. Treatment of conditions or losses resulting from hernia, disorder of reproductive organs, tonsils or adenoids within the first six months after the policy date. However, this shall not apply where treatment or loss is on an emergency basis; ...

After her hysterectomy, Company denied her claim in a letter dated August 30, 1989. Subsequently, Debra made claims for charges incurred for treatment of a urinary tract infection and a sprained ankle, both of which were denied as a pre-existing condition, allegedly without investigation.

■ Company alleges several propositions of error. First, it asserts the trial court erred in submitting the issues of bad faith and punitive damages to the jury with regard to the claims of Debra Alsobrook.

■ In an action for breach of the implied covenant of good faith and fair dealing with an insured, the plaintiff must prove his case by the standard of a preponderance of the evidence; the entire course of conduct between the parties may be considered by the jury. *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907 (Okl.1982). The unreasonableness of the insurer's actions is the essence of the tort of bad faith. See *Conti v. Republic Underwriters Ins. Co.*, 782 P.2d 1357 (Okl.1989); *McCorkle v. Great Atlantic Insurance Co.*, 637 P.2d 583 (Okl.1981). Conflicting evidence as to reasonableness of conduct of the insurer is a jury question. *Conti v. Republic Underwriters Ins. Co.*, supra. "The action of the company must be assessed in light of all facts known or knowable concerning the claim *at the time plaintiff requested the company to perform its contractual obligation.*" *Conti*, 782 P.2d at 1362, citing *Buzzard v. McDanel*, 736 P.2d 157 (Okl. 1987) (Emphasis in original.)

Company cites *Manis v. Hartford Fire Insurance Company*, 681 P.2d 760 (Okl. 1984), and *Christian v. American Home Assurance Company*, 577 P.2d 899 (Okl. 1978), for authority that it is not bad faith, per se, to resort to a judicial forum where there is a legitimate dispute between insurer and insured. In the instant case, some of Debra's problems did relate to a "disorder of reproductive organs", resulting in a hysterectomy, for which she was treated within the first six months after the policy date. There was also evidence, through deposition testimony, her doctor stated that between 1986, and March, 1989, he was sure Debra knew she had problems, but she did not have any idea as to what they were. He stated he was sure she came to see him, on April 3, 1989, because she was having problems and wanted to find out what was causing them. Company contends this shows the problems pre-existed the effective date of the policy by at least two years.

Debra testified she had always had painful menstrual periods, but she had never been told, prior to the office visit of April 3, 1989, that she had endometriosis, adenomyosis, fibrocystic breast disease or post-tubal syndrome. This visit was also the first advice she had received that she should consider having a hysterectomy. There was also evidence that once Company took the position that Debra's claims constituted a pre-existing condition, there was no investigation made, prior to denial, as to totally unrelated claims, i.e., urinary tract infection, neck problems and a sprained ankle. Company's treatment of these claims are also a part of her lawsuit against Company. Despite the fact it was arguable, from Company's standpoint, that Debra was treated, in part, for conditions which were pre-existing, there is evidence that Company's treatment of her went beyond taking a good faith stand on a pre-existing condition defense. The issue was thus properly submitted to the jury.

■ Secondly, Company contends the trial court erred in submitting the issues of bad faith and punitive damages to the jury with regard to claims made on behalf of her minor children. Claims for Cara Alsobrook (Cara) in the amount of $202.50 were not paid because they did not meet the $250.00 deductible. When another of Cara's claims was filed for $110.00, Compa-

ny contends it mistakenly opened a new file on her, and advised Debra that no benefits were payable because it did not exceed the deductible. As to Robert Casey Alsobrook (Casey), claims were filed on his behalf at different times in the amounts of $220.41 and $50.00. The claim for the $50.00 charge was placed erroneously in Debra's file, and it thus appeared that no benefits were payable on Casey's claim because the deductible had not yet been satisfied.

The evidence shows Company discovered the errors with regard to the children's claims during the deposition of Mr. Alvord, the supervisor of Company's claims department. He admitted the claims had received no action by Company. He also testified that many of the claims for Debra and her children had not been received by Company, despite the fact that particular care providers or care facilities presented proof of the fact that the charges had been sent to Company. Testifying for Company, Mr. Hammond, testified the children had valid claims before the lawsuit and also stated nothing had been paid thereon before the lawsuit was initiated. Although it was not a large amount, Mr. Alvord admitted that interest due on Casey's claims had not been paid, even though Company agreed it was owed.

■ Next, Company contends the trial court erred in refusing to submit its requested Instruction Number 26[1] detailing

its contractual defenses. Debra's response is: the jury had the policies admitted as exhibits before them in the jury room, and thus, had the information before them; that it would be confusing to instruct on the pre-existing condition of only one of the policies and not both; that Company had enlarged the provisions onto a chart which the jury viewed; and, there was discussion and argument concerning the defenses.

■ The test, upon review of instructions improperly given or refused, is whether there is probability jurors were misled and thereby reached a different result than they would have reached but for the error. See *Woodall v. Chandler Material Co.*, 716 P.2d 652 (Okl.1986). Although parties have the right to have the jury properly instructed, the failure to give this particular instruction does not, in our opinion, constitute reversible error. The subject of requested Instruction Number 26 [pre-existing condition and the exclusion, relating to treatment of reproductive organs], was contained in the policies admitted into evidence. This relates only to Debra's claims relating to her gynecological problems. It had nothing to do with her other claims, or the claims of her children. Giving the instruction could have had the effect of advising the jury that Company's actions in dealing with Debra could be excused. Upon consideration of the evidence of all the mishandled claims, we conclude the

1. Company's requested jury instruction number 26 is as follows:

You are instructed that the major medical policy which afforded coverage for the family of Donna (sic) Alsobrook commencing April 1, 1989, contained the following limitations and definitions:

PRE–EXISTING CONDITION LIMITATION
Pre-existing conditions not excluded by name or specific description are covered only after your policy has been in force for two (2) years.

A pre-existing condition is defined in the policy as follows:

"Pre-existing condition" means the existence of symptoms which would cause an ordinary prudent person to seek diagnosis, care or treatment within a five (5) year period preceding (sic) the effective date of the coverage of the insured person. It also means a condition for which medical advice or treatment was recommended by a doctor or received from a doctor

within a five (5) year period preceding (sic) the effective date of the insured person.

The policy of insurance further contained the following limitation:

No benefits are payable under this policy for treatment of conditions or losses resulting from hernia, disorder of reproductive organs, tonsils or adenoids within the first six (6) months after the policy date. However, this shall not apply where treatment or loss is on an emergency basis.

An emergency is defined as follows:

A sudden unexpected happening; an unforeseen occurrence or conditions; perplexing, continuancy, or complications of circumstances; a sudden or unexpected occasion for action; exigency; pressing necessity. Emergency is an unforeseen combination of circumstances that calls for immediate action. *Black's Law Dictionary, Fifth Edition*, definition of "emergency," at page 469.

jury was not misled or that it probably would have reached a different result if the instruction had been given.

Next, Company contends the trial court erred in refusing to give its requested instructions relating to bad faith, Instruction Numbers 9, 10, 11, 13, 15, 21, 27, 28, 29 and 32. Also, Company objects to the Court's Instruction Number 10 [2] on the bad faith issue.

However, we find the Court correctly instructed on the law of bad faith breach of an insurance contract, as defined in *Christian v. American Home Assurance Co.*, 577 P.2d 899 (Okl.1977), and the cases following it, especially when all the instructions are considered as a whole. We do not find that the jury was misled or that the result would have been different had the requested instructions been given.

■ Next, Company contends the trial court erred in giving its punitive damages instruction in failing to limit the amount of punitive damages which could be awarded, in violation of 23 O.S.1991 § 9 [3]. It contends there was no mention of the lifting of the limitation on punitive damages argued by counsel for Debra or Company. The Court merely stated as an afterthought, Company contends, that it would permit the jury to consider punitive damages without limitation. The trial court found:

I feel based on the entirety of the evidence, and not considering just the claims—medical claims of the Plaintiff herself, but also the claims of her children, considering things, such as, the fact that the insurance adjustor, Mr. Alvord, testified that they were overwhelmed by claims and have—that's how he said they misfiled things, they have more pieces of paper coming through than they can handle, I think there's been adequate evidence and that there's clear and convincing evidence that the Defendant has been guilty of conduct evincing a wanton and reckless disregard of the rights of others, oppression, and considering the overall picture of how claims from three different family members were handled during the period of litigation and dispute that you could find malice, either actual or presumed. And therefore, will allow the jury to consider

---

2. The trial court adequately instructed the jury on the bad faith issue. Instructions 10 and 11 given by the court are as follows:

Instruction number 10:

An insurer has an implied duty to deal fairly and act in good faith with its insured and the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive damages may be sought.

The essence of the tort of bad faith is the insurer's unreasonable, bad faith conduct, including the unjustified withholding of payment due under a policy.

The obligation of an insurance company is not for the payment of money only, it is the obligation to pay the policy amount immediately upon receipt of proper proof of loss or to defend in good faith and to deal fairly with its insured.

When the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability.

If you find from the facts and evidence that the Defendant acted reasonably and in good faith in its conduct toward the Plaintiff, you must find for the Defendant.

Instruction number 11:

Bad faith or the failure to deal fairly and in good faith is defined as a denial of insurance coverage without reasonable justification.

The essence of the failure to deal fairly and in good faith with an insured depends on the entire course of conduct between the parties.

3. 23 O.S.1991 § 9 provides:

A. In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant, in an amount not exceeding the amount of actual damages awarded. *Provided, however, if at the conclusion of the evidence and prior to the submission of the case to the jury, the court shall find, on the record and out of the presence of the jury, that there is clear and convincing evidence that the defendant is guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed, then the jury may give damages for the sake of example, and by way of punishing the defendant, and the percentage limitation on such damages set forth in this section shall not apply.*

B. The provisions of this section shall be strictly construed. (Emphasis added).

punitive damages without any percentage limitation.

Company cites *Shuman v. Laverne Farmers Co-op*, 809 P.2d 76 (Okl.App.1991), for the authority that the trial court must make a determination of the "prima facie sufficiency of plaintiff's evidence of fraud, malice or the like, before an award of punitive damages in excess of actual damages may be allowed." Company contends the Court, in the instant case, failed to make such a showing. We disagree with Company's assessment of the trial court's statement. Malice may be shown by "an indifference to or conscious disregard" of the rights of another, justifying an award of punitive damages. *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d at 586.

■ Next, Company contends the trial court committed error by giving Instruction Number 12 to the jury. However, we will not consider this assignment of error. Company failed to comply with Rule 15 of the Rules of the Supreme Court, 12 O.S. 1991, Ch. 15, App. 1. This rule provides in part:

Where a party complains of an instruction given or refused, he shall set out in totidem verbis the instruction or the portion thereof to which he objects together with his objection thereto....

■ Finally, Company contends the trial court erred in awarding $64,285.00 in attorney's fees. It argues the trial court improperly assessed attorney's fees which were requested by Debra pursuant to 36 O.S.Supp.1987 § 1219. It provides in pertinent part:

In the administration, servicing or processing of any individual, group or blanket accident and health insurance policy, it shall be an unfair trade practice for any insurer to fail to notify a policyholder in writing of the cause for delay in payment of any claim where said claim is not paid within thirty (30) days after receipt of proof of loss; the notification shall be by mail with return receipt requested. In addition, if a claim is not paid within sixty (60) days of proof of loss, the insurer shall pay interest ... Provided that in the event litigation should ensue based upon such a claim, the prevailing party shall be entitled to recover a reasonable attorney's fee to be set by the court and taxed as costs against the party or parties which do not prevail....

Company contends the above statute applies only in the event of litigation over a claim, and does not refer to imposing attorney fees for an insurance company's breach of the duty to act fairly and in good faith with its insured. Additionally, Company contends it does not provide for an award of fees when punitive damages are assessed. It contends the "American Rule" with regard to attorney fees is the appropriate rule to apply herein, i.e., that absent a contract or statute authorizing such, the prevailing party may not recover attorney fees against his adversary, citing, *inter alia, Holbert v. Echeverria*, 744 P.2d 960 (Okl.1987). It also contends there was no contractual agreement between the parties for award of attorney fees, or a statute which provides for the imposition of an award of fees to the prevailing party in an action for recovery for breach of the duty to deal fairly in good faith, or an award of punitive damages. Company also contends the trial court should have apportioned the fees to the various causes of action, as to tort, breach of contract and punitive damages.

In response, Debra cites Oklahoma and federal case law in which attorneys fees have been allowed in cases in which recovery has been received for both breach of contract, and bad faith conduct, under 36 O.S.Supp.1985 § 3629(B). See *Thompson v. Shelter Mutual Ins.*, 875 F.2d 1460 (10th Cir.1989); *City Nat. Bank v. Jackson Nat. Life Ins.*, 804 P.2d 463 (Okl.App.1990) (Cert. denied 1/23/91). Further, § 3629(B), contained in the chapter pertaining to general insurance contracts, provides in part:

Upon a judgment rendered to either party, costs and attorney fees shall be allowable to the prevailing party. For purposes of this section, the prevailing party is the insurer in those cases where judgment does not exceed written offer of settlement. In all other judgments the

insured shall be the prevailing party. If the insured is the prevailing party, the court in rendering judgment shall add interest on the verdict at the rate of fifteen percent (15%) per year from the date the loss was payable pursuant to the provisions of the contract to the date of the verdict. This provision shall not apply to uninsured motorist coverage.

In *City Nat. Bank v. Jackson Nat. Life Ins.*, supra, a case involving bad faith breach of a life insurance contract, this Court held as follows on the attorney fee issue, at 804 P.2d at 469:

> Construing § 3629(B) and § 4030.1 harmoniously, as we must, we find the Trial Court correctly assessed interest, but incorrectly denied Appellees their prayer for attorney fees. While § 4030.1 mandates the interest rate on withheld life insurance proceeds, § 4030.1 is totally silent as to awards of attorney's fees in actions on life insurance contracts. In the presence of such legislative silence on the issue, we deem the Legislature to have intended that attorney fees should be recoverable generally in all actions on insurance policies under § 3629(B), irrespective of the particular type of policy, unless specifically elsewhere proscribed.

See also *Oliver's Sports Center, Inc. v. National Standard Ins. Co.*, 615 P.2d 291 (Okl.1980), a bad faith insurance case involving a fire insurance policy, in which attorney fees were awarded under 36 O.S.Supp.1977 § 3629(B).

In the order awarding attorneys fees, the trial court made the following findings:

> The time and effort required to properly prepare and try this case and to obtain and present the difficult and technical evidence and testimony was extensive.

> The Defendant National Travelers Life Company contributed to the complexity and extensiveness of the present litigation by its refusal to cooperate in pre-litigation discovery and its denial of the agency of Defendant Tim Longest throughout the lawsuit and approximately two days of jury trial.

> Once litigation became required for the recovery of benefits, the Plaintiff insured

was required to fully and completely litigate all issues.

The trial court held an evidentiary hearing on the issue and took the matter under advisement. In its order, the court appropriately denied charges for time spent by legal assistants. The trial court had authority to award attorney fees, and the award was based upon the evidence presented.

AFFIRMED.

ADAMS, P.J., and JONES, J., concur.