OSCN Found Document:FALCONE v. LIBERTY MUTUAL INSURANCE CO.

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 FALCONE v. LIBERTY MUTUAL INSURANCE CO.
2017 OK 11
Case Number: 115252
Decided: 02/14/2017
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2017 OK 11, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

MALINDA FALCONE, Plaintiff/Appellant,
v.
LIBERTY MUTUAL INSURANCE COMPANY, LM GENERAL INSURANCE COMPANY, and ANTHONY LEWIS, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY, OKLAHOMA

HONORABLE THOMAS E. PRINCE 

¶0 Plaintiff/Appellant Malinda Falcone brought an insurance claim against Defendants/Appellees for payment of her emergency room medical expenses. Her claim was made pursuant to the Uninsured/Underinsured Motorist (UM) provisions of her mother's automobile insurance policy following the injuries she sustained as a passenger in her mother's car when an uninsured driver ran a stop sign and collided with them. Defendants/Appellees initially questioned the decision to refer Plaintiff to the level 2 trauma center of the emergency room and refused to pay the bill Plaintiff received from the OU Medical Center trauma center. After nearly a year of offers and rejections, Plaintiff sued Defendants for breach of the implied duty of good faith and fair dealing for failing to pay her trauma room "compensatory damages" as required under the policy. The trial court granted summary judgment in favor of Defendants and denied Plaintiff's motion for new trial. We hold it is a question for the trier of fact whether Defendants showed a lack of good faith in handling Plaintiff's claim for payment. The trial court erred in granting summary judgment in Defendants' favor, holding as a matter of law that Defendants did not commit the tort of bad faith.

REVERSED AND REMANDED

Randall K. Calvert, Rabindranath Ramana, Oklahoma City, Oklahoma, for Appellant,
Tim D. Cain, Oklahoma City, Oklahoma, for Liberty Mutual Insurance Company and LM General Insurance Company, Appellees.

OPINION

WATT, J.:

¶1 At issue in this appeal is whether defendants/appellees Liberty Mutual Insurance Company and LM General Insurance Company have committed the tort of bad faith by withholding payment of "compensatory damages" from plaintiff/appellant Malinda Falcone. This Court previously retained this case. We hold that summary judgment was premature and that the question is one for the jury.

¶2 Plaintiff Falcone seeks compensatory and punitive damages for the breach of good faith and fair dealing by Defendant for its refusal to pay her medical bills incurred at the emergency room Level 2 (L2) trauma center under the uninsured/ underinsured motorist (UM) insurance coverage of her mother, Linda Smith. The trial court granted summary judgment in favor of defendant and denied Plaintiff's motion for new trial.

¶3 Plaintiff's request for additional briefing was deferred to the decision on the merits. The request is denied.

FACTS

¶4 Plaintiff was injured in an automobile accident while riding as a passenger in the Kia Optima driven by her mother, Linda Smith, on October 5, 2013, in Oklahoma City, Oklahoma. The accident was caused by defendant, Anthony Lewis, an uninsured motorist, who ran a stop sign and collided with Ms. Smith's vehicle. Plaintiff was taken by ambulance to the OU Medical Center Emergency Room. The ER transferred her to its L2 trauma center. The medical bill from OU Medical Center was $47,203.00 for the ER treatment, which included $24,420.25 for the L2 trauma center. Additional charges were also incurred for treatment elsewhere after the date of the accident, and Plaintiff submitted medical bills in the total amount of $67,098.23 to Defendant Liberty Mutual Insurance Company to be paid as "compensatory damages" under her mother's UM policy coverage.

¶5 Liberty Mutual submitted the medical records to two expert witnesses for review. The first expert, Dr. Tereshchenko, opined that Falcone did not meet the triage criteria for L1 or L2 trauma, and that the three CT scans performed were not necessary. The other expert, Dr. Stewart, also concluded Falcone did not fit L2 trauma patient guidelines, and found "no evidence in the medical record or the ambulance treatment record to substantiate an L2 trauma response at University Hospital as reasonable and necessary." Dr. Stewart noted Falcone was discharged after four hours of her arrival with a cervical collar, but without a pain medicine prescription. The emergency room charges and the L2 trauma charges were submitted to Liberty Mutual, which denied the L2 trauma charges as unnecessary.

¶6 Falcone filed a petition, alleging breach of contract of the UM benefits, for failing to pay the L2 trauma charges as "compensatory damages" under the UM contract provisions, and the breach of the duty of good faith and fair dealing (bad faith). Liberty Mutual filed its motion for summary judgment, raising the defense that it is not bad faith to question the reasonableness of the medical charges. After several lower offers were made by Defendant to settle, it proffered $100,000.00 on December 23, 2014, as the "unconditional payment of uninsured motorist limits."

¶7 On July 11, 2016, the district court granted the motion for summary judgment in favor of Liberty Mutual. The court ruled Oklahoma law allows an insurer to question the reasonableness of medical charges without being in breach of the duty of good faith and fair dealing. The court's order provides:

11. The Court has not identified any binding precedent in Oklahoma to the effect that all emergency room charges following an accident are, as a matter of law, considered to be 'compensatory damages' for purposes of a UM claim. Plaintiff Falcone has relied on Radford-Shelton Associates Dental Laboratory, Inc. v. Saint Francis Hospital, Inc., 1976 OK CIV APP 41, 569 P.2d 506. Radford-Shelton is, however, distinguishable from this case. Radford-Shelton, concerned the issue of 'successive tortfeasors' and whether the original tortfeasor had a right to secure contribution against another party who negligently aggravated the initial injury. Id., at 507. The Court there held that a right of contribution existed because, to hold otherwise, would have resulted in unjust enrichment on the part of the subsequent tortfeasor. Id., at 511. . . .

12. Based on the undisputed facts of this case, the Liberty Mutual Defendants acted within their rights to analyze Plaintiff Falcone's UM claim through the lens and/or context of OUJI 4.1K. More specifically, as a matter of law, the Liberty Mutual Defendants did not commit the tort of bad faith by considering whether Plaintiff Falcone's emergency room charges were reasonable, in light of the necessary medical care and treatment provided during the emergency room visit, rather than compensating Plaintiff Falcone for the full amount of the emergency room medical charges that were incorrect. See OUJI 4.1K.[1]

 

13. . . .[O]ther than the claim addressed above in this Journal Entry, Plaintiff Falcone has not asserted that the Liberty Mutual Defendants engaged in any misconduct in this case.

 

OFFERS AND NEGOTIATIONS

¶8 Defendant's adjustor Dunlap initially evaluated Plaintiff's claim at between $37,855.23 - $42,855.25 because the peer review group opined the three CT scans were unnecessary. It was their opinion that x-rays were sufficient. Dunlap offered $37,855.23, which consisted of: $28,855.23 for medical bills; $10,000.00 for non-economic damages; less $1,000.00 for medical pay coverage. Dr. Stewart opined Plaintiff's injuries were not L2 trauma level. Dunlap later increased the range of the offer to $42,855.23 - $55,677.98, adding the cost of CT scans because the first and second peer reviews differed. Defendant sent a check for $52,677.98 to Plaintiff. However, Plaintiff did not cash the check. Plaintiff filed her petition on August 4, 2014, for breach of contract and bad faith after approximately ten months of negotiations resulting in offers of nearly $15,000.00 less than the documented bill Plaintiff presented to Defendant. She amended her petition on October 3, 2014, adding LM General as a party. After the lawsuit was filed, Defendant sent a check on December 23, 2014, for $100,000.00 representing the "unconditional payment of UM limits," more than one year after Plaintiff incurred the medical expenses.

¶9 Defendant offered less than the maximum amount of its evaluations after taking the position the L2 trauma treatment was unwarranted. More than once, it offered the low figure instead of the higher one. The change in the offers also could be seen as arbitrary attempts to close a case. Ultimately, Plaintiff was forced to file a lawsuit, after which Defendant sent a check for $100,000.00, the UM limits of the policy.

DISCUSSION AND AUTHORITY

¶10 In Christian v. American Home Assurance Company, 1977 OK 141, 577 P.2d 899, this Court adopted the rule that an insurer has an implied duty to deal fairly and to act in good faith with its insured. The violation of this duty gives rise to an action in tort for which consequential damages, as well as punitive damages, may be sought. Id., at 904. We did not hold that an insurer breaches this duty merely by litigating a claim or by receiving a judgment against it in an amount larger than it offered its insured. Tort liability is to be imposed only upon a clear showing "that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured." Id., at 905. In this case, whether withholding payment for the costs of the trauma center as "compensatory damages" was unreasonable and in bad faith is a fact question for a jury. See Newport v. USAA, 2000 OK 59, 11 P.3d 190; McCorkle v. Great Atlantic Insurance Co., 1981 OK 128, 637 P.2d 583. We have held that medical expenses can constitute "compensatory damages." Southwestern Greyhound Lines, Inc. v. Rogers, 1954 OK 40, 267 P.2d 572; Denco Bus Lines, Inc. v. Hargis, 1951 OK 11, 229 P.2d 560. The amount of the bill Plaintiff received for the treatment at the L2 trauma center was completely beyond her control, as was the decision of the ER doctor to send her there in the first place.

¶11 While an insurance company may consider the reasonableness of compensatory damages when it questioned whether the L2 trauma center was necessary, we find the trial court erred in granting summary judgment in Defendant's favor, holding as a matter of law that Defendant did not commit the tort of bad faith. A jury's determination of the facts is necessary to determine whether a lack of good faith is shown by Defendant's offers to Plaintiff over the course of one year, which ultimately led to Plaintiff's lawsuit and the offer by Defendant of the policy's UM limits of $100,000.00. We hold the significance of the undisputed facts, and whether Defendant's actions over the course of their negotiations constituted bad faith, are questions for the trier of fact. Summary judgment in favor of Defendant was premature and must be reversed.

¶12 The trial court's order denying Plaintiff's motion for new trial is reversed. This case is remanded to the trial court for further proceedings in accordance with the views expressed in this opinion.

¶13 REVERSED AND REMANDED.

Combs, C.J., Kauger, Watt, Winchester, Edmondson, and Colbert, JJ., concur;

Gurich, V.C.J., (by separate writing), and Reif, J., concur in part, dissent in part.

FOOTNOTES

[1] The trial court's reference to the Oklahoma Uniform Jury Instructions-Civil 4.1 (OUJI-CIV 4.1) recognizes a factual issue was presented. Pursuant to 4.1(K), a jury would decide the amount of damages based on "the reasonable expenses of the necessary medical care, treatment, and services, past and future," if it decides in Plaintiff's favor.

 

 

GURICH, V.C.J., with whom REIF, J. joins concurring in part and dissenting in part:

¶1 I agree with the majority that this cause should be remanded to the trial court. It was error for the trial court to sustain the Defendants' Motions for Summary Judgment. Based on the record, Liberty Mutual acted in bad faith. I would submit the cause to a jury, but only for a determination as to whether the Plaintiff, Malinda Falcone, is entitled to actual and punitive damages.

Relevant and Undisputed Facts

¶2 Plaintiff Malinda Falcone was the passenger in her mother's car when the car was involved in an accident caused by Defendant Driver Anthony Lewis on October 5, 2013. At the time of the accident, Ms. Falcone was an "insured" under her mother's LibertyGuard Auto Policy. The policy was issued by Defendant LM General Insurance Company. Defendant Liberty Mutual Insurance Company owns 100% of Defendant LM General Insurance Company. The Defendant Driver, Mr. Lewis, was uninsured.

¶3 The LM General Policy provided for uninsured motorist coverage up to $100,000 per person. The UM policy provision provides:

We will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury:'

1. Sustained by an 'insured;' and
2. Caused by an accident.

The policy also provided for $1,000 of Medical Payments Coverage. The med-pay provision provides:

We will pay reasonable expenses incurred for necessary medical and funeral services because of 'bodily injury:'

1. Caused by accident; and
2. Sustained by an 'insured.'

¶4 Immediately after the accident, Ms. Falcone was transported by ambulance to the OU Medical Center emergency room. She arrived at 1:16 p.m. and was released at 4:55 p.m. She was not admitted to the hospital. She arrived to the emergency room on a backboard with a c-collar in place. She had vertebral tenderness, but according to OU Medical Center personnel, "the interview [with Ms. Falcone] was limited because of [her] inability to communicate clearly."[1] Ms. Falcone was under significant stress and crying according to the medical record. An abdominal examination was unreliable. Medical personnel at the emergency room determined Ms. Falcone should be transferred to the trauma unit. CT scans were done on her brain, spine, abdomen, and pelvis, and x-rays were also performed. All came back within normal limits. Ms. Falcone was discharged and told to follow up in two weeks.

¶5 The OU Medical Center emergency room billed Ms. Falcone $47,203.00 for her visit. The emergency room bill included a $24,420.25 charge for the hospital's "Trauma II" designation. Ms. Falcone also received subsequent treatment for neck, knee, back pain, and severe headaches. She was examined by a family physician and received physical therapy. She was referred to a pain management specialist and received two cervical spine epidural steroid injections. Her medical bills totaled $67,098.23.[2]

¶6 In February 2014, Ms. Falcone, through her attorney, submitted a UM claim to Liberty Mutual for policy limits. Liberty Mutual investigated the claim and sent the emergency room records to two out-of-state utilization reviewers. Both reviewers, a Dr. Stewart and a Dr. Tereshchenko, reviewed the medical records, bills, and other documents. Both reviewers found that the treatment of the patient at the OU Medical Center emergency room as Level II trauma was not necessary although both reviewers agreed it was appropriate to transport Ms. Falcone to the emergency room. One reviewer also took issue with the emergency room physician's decision to order CT scans, concluding the scans weren't necessary. Relying on such evaluations, Liberty Mutual did not initially agree to pay the $24,420.24 Trauma II emergency room charge and refused to pay for charges related to the CT scans. Liberty Mutual offered to settle Ms. Falcone's claim for $37,855.23 on April 1, 2014. Plaintiff Falcone declined the offer the next day.

¶7 After Ms. Falcone declined the initial offer, Liberty Mutual reevaluated the claim and increased the evaluation to $52,677.98 to include all charges related to the CT scans but continued to refuse to pay the Trauma II charges. Liberty Mutual sent Ms. Falcone a check on April 17, 2014. The check was not cashed. On July 26, 2014, Liberty Mutual sent Ms. Falcone a letter advising her that they had paid $1,000 under the policy's med-pay coverage and that such med-pay coverage had been exhausted.

¶8 On August 4, 2014, Ms. Falcone, and her mother, Plaintiff Linda Smith, filed this action alleging breach of contract and bad faith against the Liberty Mutual Defendants and negligence against Defendant Anthony Lewis. The parties participated in mediation in December of 2014. After mediation failed to resolve the case, Liberty Mutual paid the $100,000 UM limit to Ms. Falcone to conclude the contract claim. Plaintiff Linda Smith, Ms. Falcone's mother, dismissed her breach of contract claim without prejudice on January 16, 2015. On August 25, 2016, Ms. Falcone filed a suggestion of death, advising the court that the Defendant Anthony Lewis is now deceased. On the same date, Ms. Falcone dismissed her negligence claim against Defendant Lewis without prejudice. Thus, only Ms. Falcone's bad faith and punitive damages claim remained pending against the Liberty Mutual Defendants.

¶9 The trial court granted summary judgment in favor of both Liberty Mutual Defendants on March 29, 2016, and found that as a matter of law, Liberty Mutual did not commit the tort of bad faith by considering whether Ms. Falcone's emergency room charges were reasonable, in light of the necessary medical care and treatment provided during the emergency room visit, rather than compensating Ms. Falcone for the full amount of the emergency room medical charges that were incurred. The trial court denied Ms. Falcone's Motion for New Trial on July 11, 2016. Ms. Falcone appealed and filed a Motion to Retain in this Court. The Motion to Retain was granted on August 22, 2016.

Liberty Mutual Acted in Bad Faith

¶10 An insurer has an implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received. Christian v. Am. Home Assurance Co., 1977 OK 141, ¶ 25, 577 P.2d 899, 904. The essence of a bad-faith action "is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy." McCorkle v. Great Atl. Ins. Co., 1981 OK 128, ¶ 21, 637 P.2d 583, 587. The tort of bad faith does not foreclose the insurer's right to deny a claim, resist payment, or litigate any claim to which the insurer has a legitimate defense. Buzzard v. Farmers Ins. Co., 1991 OK 127, ¶ 13, 824 P.2d 1105, 1109. However, when presented with a claim by its insured, an insurer must conduct an investigation reasonably appropriate under the circumstances and the claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient. Id. The decisive question is whether the insurer had a good faith belief, at the time its performance was requested, that it had justifiable reason for withholding payment under the policy. Id. "The knowledge and belief of the insurer during the time period the claim is being reviewed is the focus of a bad-faith claim." Id.

¶11 The UM provision in the Liberty Mutual policy provides:

We will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury:'

1. Sustained by an 'insured;' and
2. Caused by an accident.

In contrast, the med-pay provision in the policy provides that:

We will pay reasonable expenses incurred for necessary medical and funeral services because of 'bodily injury:'

1. Caused by accident; and
2. Sustained by an 'insured.'

The med-pay provision might arguably allow Liberty Mutual to do what it did in this case and send the claim to a reviewer to determine what medical services/expenses were "reasonable" and "necessary." But no such language exists in the UM provision. The UM provision requires that Liberty Mutual pay the compensatory damages the insured is legally entitled to recover from the uninsured driver. The language of the UM provision does not allow Liberty Mutual to question the reasonableness or necessity of the medical services or expenses. Nor is there any statutory authority to allow an insurance company to withhold payment.[3] 

¶12 In addition, Liberty Mutual has not disputed, and cannot dispute, that Ms. Falcone was taken to the emergency room as a direct result of the car accident with Mr. Lewis. Ms. Falcone was taken to the OU Medical Center emergency room based upon the choice of the ambulance driver, not her own. She received tests and treatment selected by the OU Medical Center emergency room physicians, and again, had no say in the treatment or decision to send her to Trauma II. There has been no allegation that there was any kind of supervening cause, i.e., some reckless act by emergency room staff that made Ms. Falcone's injuries worse and could have allegedly been a supervening cause. In fact, it's just the opposite--Liberty Mutual argues the emergency room staff ordered too many tests and were too cautious in treating Ms. Falcone as Level II trauma. Oklahoma law is clear and well settled on this issue. The OU Medical Center emergency room bill is part of Ms. Falcone's compensatory damages.[4] Liberty Mutual ignored the plain language of their policy and disregarded well settled law regarding compensatory damages. The very act of using the utilization reviewers as a pretext to deny payment of the emergency room bill in this case is bad faith. Liberty Mutual had no justifiable reason for withholding payment under the policy.[5]

Conclusion

¶13 Because Liberty Mutual acted in bad faith, on remand, Liberty Mutual's defense should be limited to the amount of damages for which they are liable. Ms. Falcone should be allowed to present all of her evidence relating to Liberty Mutual's bad faith conduct in handling her claim. From that evidence a jury can then determine the amount of actual damages owed Ms. Falcone for Liberty Mutual's bad faith conduct and whether Liberty Mutual recklessly disregarded its duty to deal fairly and act in good faith[6] or intentionally and with malice breached its duty to deal fairly and act in good faith in disputing the full payment of Ms. Falcone's emergency room bill, entitling Ms. Falcone to an award of punitive damages.[7]

FOOTNOTES

[1] Record on Accelerated Appeal, Ex. 10, at Ex. 1.

[2] The 67,098.23 in medical bills included the $47,203.00 bill from OU Medical Center and approximately $20,000.00 for treatment after the date of the accident.

[3] Uninsured motorist coverage is for the "protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom." 36 O.S. Supp. 2014 §3636(B). See also Kratz v. Kratz, 1995 OK 63, ¶ 7, 905 P.2d 753, 755 ("We have recognized that uninsured motorist coverage is a carrier's direct promise to its insured to pay the insured for a loss, rather than a promise to its insured to pay a third party; it is 'first-party coverage' like collision insurance, not 'third-party coverage' like public liability insurance. The recovery of the insured is based on the terms of the policy and the action is one in contract.").

[4] It is undisputed that the negligence of Defendant Lewis caused the accident. Plaintiff suffered damages as a result. Title 23 O.S. § 61 provides that "[f]or the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which compensate for all detriment proximately caused thereby, whether it could have been anticipated or not." This Court has defined "detriment" as "a loss or harm suffered by the person wrongfully injured and the measure of damages is the amount which will adequately compensate for all detriment proximately caused thereby." Chicago, R.I. & P.R. Co. v. Wright, 1954 OK 312, ¶ 31, 278 P.2d 830, 836. In addition, Black's Law states that compensatory damages are synonymous with actual damages--the amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses.

[5] The Tenth Circuit, relying on this Court's case law, has held that evidence that an insurance company ignored the provisions of its own policy and ignored Oklahoma law in disputing or denying certain coverage can constitute bad faith. Haberman v. The Hartford Ins. Group, 443 F.3d 1257, 1271 (10th Cir. 2006).

[6] Under 23 O.S. 2011 §9.1(B)(2)(b), if a jury finds that the insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured, the jury may award punitive damages in the amount of actual damages or $100,000 whichever is greater.

[7] Under 23 O.S. 2011 § 9.1(C)(2)(a-b), if a jury finds that the insurer has intentionally and with malice breached its duty to deal fairly and act in good faith with its insured, the jury may award punitive damages up to $500,000 or twice the amount of actual damages, whichever is greater. "[M]alice may be shown by 'an indifference to or conscious disregard' of the rights of another, justifying an award of punitive damages." Alsobrook v. Nat'l Travelers Life Ins. Co., 1992 OK CIV APP 168, ¶ 18, 852 P.2d 768, 773.

 

 





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1992 OK CIV APP 168, 852 P.2d 768, 64 OBJ 1598, Alsobrook v. National Travelers Life Ins. Co.
Discussed
 1976 OK CIV APP 41, 569 P.2d 506, RADFORD-SHELTON, ETC. v. ST. FRANCIS HOSPITAL
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1991 OK 127, 824 P.2d 1105, 62 OBJ 3671, Buzzard v. Farmers Ins. Co., Inc.
Discussed
 1954 OK 40, 267 P.2d 572, SOUTHWESTERN GREYHOUND LINES v. ROGERS
Discussed
 1954 OK 312, 278 P.2d 830, CHICAGO, ROCK ISLAND & PACIFIC RAILROAD v. WRIGHT
Discussed
 1995 OK 63, 905 P.2d 753, 66 OBJ 2032, Kratz v. Kratz
Discussed
 1977 OK 141, 577 P.2d 899, CHRISTIAN v. AMERICAN HOME ASSUR. CO.
Discussed at Length
 1981 OK 128, 637 P.2d 583, McCorkle v. Great Atlantic Ins. Co.
Discussed at Length
 1951 OK 11, 229 P.2d 560, 204 Okla. 339, DENCO BUS LINES Inc. v. HARGIS
Discussed
 2000 OK 59, 11 P.3d 191, 71 OBJ 2062, Newport v. USAA
Cited
Title 23. Damages
 Cite
Name
Level

 23 O.S. 9.1, Damages for Sake of Example and Punishment of Defendant - Punitive Damages Awards by Jury
Discussed
 23 O.S. 61, Breach of Obligation not Arising from Contract - Measure of Damages
Cited
Title 36. Insurance
 Cite
Name
Level

 36 O.S. 3636, Uninsured Motorist Coverage
Cited